WILLIAM W. CONNER *vs.* DRAPER COMPANY.

Worcester.    September 29, 1902. — October 30, 1902.

Present: HOLMES, C. J., MORTON, LATHROP, BARKER, & LORING, JJ.

*Negligence*, Employer's liability.

In an action by a workman in a screw factory for injuries from being struck by the loose revolving end of a wire out of which screws were being made by a fellow workman by passing the wire through a lathe, it appeared, that the wire would not have struck the plaintiff if supported and held in place by a horse adapted for the purpose, that such a horse was there, that the reason the fellow workman did not use it was because the plaintiff's truck holding pieces of wire was in the way, and that the truck could have been put by the plaintiff in either of two other places less convenient for him where it would not have been in the way. *Held*, that a verdict rightly was ordered for the defendant, the accident having happened either through the negligence of the plaintiff in putting his truck where he did or the negligence of his fellow servant in not moving it away or because of both, and the danger being a visible one in regard to which no warning was necessary.

TORT for personal injuries while employed in the screw factory of the defendant.    Writ dated September 17, 1900.

In the Superior Court *Gaskill*, J. at the close of the plaintiff's evidence ordered a verdict for the defendant; and the plaintiff alleged exceptions.

*H. Parker*, for the plaintiff.

*W. B. Sullivan*, for the defendant.

LORING, J.    This is an action for personal injuries.    When the accident occurred, the plaintiff was at work in the defendant's factory, running a lathe to make screws.    The wire was fed into the lathe on the left and was cut and shaped on the right end into a screw, then cut off and moved along automatically, to make another screw.    While the screws were being made, the wire made between eight hundred and twelve hundred revolutions a minute.    The end of the wire, protruding at the left end of the lathe, is sometimes as much as fifteen feet long when first put in; this loose end of wire is kept in position by a horse, which consists of a standard with a hole in the top and a screw on top of the hole.    The wire is put through the hole, or through a piece of gas pipe screwed into the hole.

There was a row of these lathes and they were set on a slant, so that the long ends of wire protruded behind the lathe next on the left, and there was about three feet between the several lathes.

At the time of the accident, the plaintiff was making screws from pieces of wire about three feet long, and Shedd, who was running the lathe next on his right, was using wire from eight to fourteen feet in length. The plaintiff's pieces of wire were on a truck, which was standing between his machine and Shedd's; and while stooping down to get another piece of wire from the truck, he was struck by the loose end of Shedd's wire, about three feet long, bent at right angles and swinging round in a circle with a diameter of six feet.

It appeared that if the horse holding the loose end of the wire is not moved along as the wire is eaten up by the machine, and the wire is allowed to revolve without being held in position, it is apt to wobble, and if it begins to wobble or is bent, it is soon bent at right angles by the velocity of the revolutions it is making. It is to prevent this that the horse is used, and when a very long wire is in the machine, the pipe is set on the top of the horse to prevent a wobble in the wire between the horse and the machine or beyond the end of the horse.

Prior to the accident, Shedd had moved up the horse as the wire was eaten up by the lathe, but when the wire had been eaten up so that only about three feet of wire protruded from the left end of Shedd's machine, the plaintiff's truck stopped Shedd's moving the horse further, and Shedd, in place of moving the truck and keeping the wire in the horse, let the end revolve unsupported; it was thereby bent at right angles, and struck the plaintiff as he stooped over the truck to get a piece of wire to feed into his machine. There was an aisle behind the lathes five or six feet wide, where the plaintiff's truck could have been placed, or it could have been placed on the other side of the plaintiff's lathe; but it appeared that the truck was in a more convenient place for the plaintiff, where it was between the machines, than if it had been in the aisle or on the other side of the lathe. The plaintiff was a witness on his own behalf, and called as witnesses Shedd and the foreman of the room in question. On their evidence the presiding judge directed

a verdict for the defendant, and the case is here on an exception to that ruling. There were two exceptions to the exclusion of evidence, but as they have not been argued by the plaintiff we treat them as waived.

The plaintiff's first contention is that the defendant did not provide a reasonably safe place in which the plaintiff could work, because there was no pipe horse provided for Shedd's machine. But it appears that there was a horse provided, and that the accident would not have happened had the horse been moved along as the wire was eaten up. The horse was not moved up either because of the negligence of the plaintiff in putting his truck between the machines where it stopped the horse's being moved up and holding the wire for the last three feet of it, or because of the negligence of Shedd in not moving out the truck and moving up the horse, or because of both; but the defendant is not liable for an accident caused by negligence of the plaintiff or his fellow servant, or by both. The necessity for a pipe horse as distinguished from a horse had disappeared (if it ever existed) when only three feet of the wire remained on the left of Shedd's machine.

The plaintiff's next contention is that he was set to work on the lathe without being warned of the danger in question, and that he did not know of it. But apart from the plaintiff's prior experience when in the screw business in Hopedale, the plaintiff had been working in the defendant's machine shop for four months before the accident happened, and during that time had been running a variety of machines, including a machine to shave off screws, a retapping machine, a big milling machine, a small milling machine, a thread machine and a screw machine. It is true that the plaintiff on his direct examination testified: " I had no instruction or warning to look out for the kicking or flapping of the wire on the next machine, and had never seen it kick or flap"; but on cross-examination he admitted that "during the year and three months that I worked on this machine, I heard the wires rattle quite frequently"; and on recross-examination: " If a pipe horse with a pipe three feet long was being used, with a rod or piece of pipe sixteen feet long, the end of the wire would wobble just the same as I have described it. If the pipe had been used on the end of the sixteen foot wire, and

there was ten feet of wire between the end of the pipe and the machine, it would wobble in the middle." The danger was one in plain sight, and was apparent at least, to one of the plaintiff's experience, and no warning was necessary. See in this connection *McAuliffe* v. *Gale*, 180 Mass. 361.

The plaintiff's next contention is that the case should have been left to the jury under the employers' liability act. His ground for this contention is that there was a defect in the ways, works and machinery when he was put to work, because the ways, works and machinery were unsuitable in that no pipe horse was provided for Shedd's machine, and he relies on *Geloneck* v. *Dean Steam Pump Co.* 165 Mass. 202. The short answer to that is that a horse was being used by Shedd, that a lathe with a horse is a suitable machine, at least so far as the accident in question was concerned, and the only reason why the accident happened was that the horse was not holding the wire at the time, through the negligence of the plaintiff or of his fellow workman Shedd, or of that of both of them. All the necessary instruments had been furnished by the defendant. The instruments in question were instruments which had to be adjusted from moment to moment as the work progressed; the adjustment was not a duty resting on the master, and if neglected by a fellow servant the master is not liable.

*Exceptions overruled.*