Decided 10 November, 1902.

## DUNTLEY *v.* INMAN.

[70 Pac. 529, 59 L. R. A. 785.]

INJURY TO EMPLOYE—NEGLIGENCE—RES IPSA LOQUITUR.

1. The rule of evidence sometimes called *res ipsa loquitur* does not apply in actions by injured employes against their masters for injuries arising from defects in machinery or appliances where the only fact shown is the death from the accident ; thus, showing merely the death of an employe from the breaking of a pulley connected with a machine at which he was working does not justify an inference that the master was negligent.

DUTY OF MASTER TO A SERVANT—LIABILITY FOR NEGLIGENCE.

2. A master is not an insurer of the safety of a servant, and is liable for only those injuries that result from defects in the machinery which were or ought to have been known to him, and were unknown to the servant.

MASTER AND SERVANT—KIND OF APPLIANCES REQUIRED.

3. A master is not under obligation to furnish the best appliances for the use of his servant, but his liability is discharged when he furnishes such appliances as are ordinarily used for the purposes intended, and keeps them in proper condition.

OPINION EVIDENCE—QUALIFICATION OF EXPERT.

4. Merely being a millwright whose duty it is to repair and look after pulleys does not show one to be an expert, entitled to give his opinion as to what caused a pulley to break.

WITNESS—KNOWLEDGE OF SUBJECT.

5. It must be shown that a witness has some reasonably comprehensive

knowledge of the subject about which he is to testify before being heard: for example, a mill employe who is on duty only at night should not be heard on the question of whether the machinery was regularly inspected, for his knowledge on the subject is not sufficiently extensive.

LIMIT OF CROSS-EXAMINATION.

6. One who has testified merely that a pulley and belt, by the breaking of which plaintiff's intestate was killed, had been running four years without accident, cannot, on cross-examination, be asked whether several men had not been killed in the mill in that time, for manifestly such a matter is not at all connected with or related to the subject of the direct examinaton.

From Multnomah: ALFRED F. SEARS, JR., Judge.

This is an action by Ida M. Duntley, administratrix, against Inman, Poulsen & Co., a corporation, to recover damages for the death of Marcus H. Duntley, plaintiff's intestate, alleged to have been caused by the negligence of the defendant. Duntley, at the time of his death, and for two or three years prior thereto, had been employed by the defendant, running one of its planers. His duty was to start up the machine and run the lumber through it, see that it was kept in condition, and if he found anything wrong with it, to report to the foreman. The planer was operated by a belt running to an iron pulley about twenty-two inches in diameter, on a revolving shaft, upon which there was also a loose pulley, which revolved around the shaft. When the machine was not in operation the belt was transferred to the loose pulley, and when it was again to be set in motion the belt was slipped back to the tight pulley, immediately taking up the power from the revolutions of the shaft and conveying it to the machine, thus setting it in motion. The slipping back and forth of the belt was a part of the duties of the deceased, which he accomplished by means of a stick about four feet long, and one and one half inches in diameter. On August 25, 1900, when he moved the belt from the loose to the tight pulley for the purpose of starting the planer, the latter pulley suddenly broke in several pieces, and he was caught by the belt, which parted, and he was drawn into the machinery and killed. The pulley and planer were purchased from and set up by a reputable manufacturer, and thoroughly tested, about four years before the accident. They had been in constant and satisfactory use since that time, and the testimony disclosed

no apparent cause for the breaking of the pulley. No one saw the accident, and from the testimony it is not clear whether the belt or pulley broke first, or whether the pulley broke because Duntley was drawn into the machinery by the belt, or whether he was drawn into it and killed on account of the breaking of the pulley. Emil Klosner, one of the witnesses for plaintiff, testified that just a moment before the accident he saw Duntley oiling the machine, and then start to move the belt from the loose to the tight pulley for the purpose of putting it in motion; that immediately thereafter he heard a noise, and, looking up, saw Duntley standing near the pulley, but that he was an instant later drawn into the machinery by the belt; that, at the time witness looked up, the belt was flying in the air, and he could not tell whether Duntley was struck by a piece of the belt or of the pulley. Johnson, the planer foreman, testified that, a few minutes before the accident, Duntley came to him to ask about some lumber he was going to plane; that he then took his oil can and went to the machine to oil and start it up; that immediately thereafter witness heard a noise, and, looking up, saw Duntley in the machinery. The complaint charges that the defendant was negligent (1) in providing a defective belt; (2) a defective pulley; (3) in failing and neglecting to box in or protect the machinery so as to prevent injury to persons running or operating the same; and (4) in failing and neglecting to furnish a belt shifter or other suitable appliance by which the belt could have been shifted from the loose to the tight pulley, for the want of which the deceased was compelled to, and did, stand in a place more exposed to injuries from the machinery than he otherwise would have been required to do. The last allegation was stricken out by the court below. An answer was thereupon filed, denying the negligence charged; and upon the trial the defendant had a verdict and judgment, from which the plaintiff appeals.            AFFIRMED.

For appellants there was an oral argument by *Mr. Henry E. McGinn* and *Mr. Victor K. Strode,* with a brief to this effect:

I. The rule of law embodied in the maxim *res ipsa loquitur*

is now fully recognized and established in this state: *Esberg Cigar Co.* v. *City of Portland,* 34 Or. 282, 302 (55 Pac. 961, 75 Am. St. Rep. 651, 43 L. R. A. 435) ; *Boyd* v. *Portland Elec. Co.* 40 Or. 126 (7 Am. Electl. Cas. 661, 66 Pac. 576) *Boyd* v. *Portland Elec. Co.* 41 Or. 336 (68 Pac. 810).

II. The presumption carried by this maxim originates from the nature of the act or occurrence, and not from the nature of the relations between the parties: *Judson* v. *Giant Powder Co.* 107 Cal. 549 (48 Am. St. Rep. 146, 29 L. R. A. 718, 40 Pac. 1020) ; *Houston* v. *Brush,* 66 Vt. 331 (29 Atl. 380) ; *Griffen* v. *Manice,* 166 N. Y. 188 (59 N. E. 925) ; *Snyder* v. *Wheeling Elec. Co.* 43 W. Va. 661 (64 Am. St. Rep. 922, 39 L. R. A. 499, 28 S. E. 733, 7 Am. Electl. Cas. 473).

III. The late decisions with great unanimity apply the rule *res ipsa loquitur* to controversies between master and servant the same as between other persons. All the following cases are between master and servant: *Atchison, T. & S. F. Ry. Co.* v. *Mulligan,* 67 Fed. 569 (14 C. C. A. 547) ; *Farmers' L. & T. Co.* v. *Toledo., A. A. & N. M. R. Co.* 67 Fed. 73 ; *Posey* v. *Scoville,* 10 Fed. 140 ; *Rose* v. *Stephens & C. Transp. Co.* 11 Fed. 438 ; *Coleman* v. *Mechanics' Iron F.* 168 Mass. 254 (46 N. E. 1065) ; *Graham* v. *Badger,* 164 Mass. 42 (41 N. E. 61) ; *Hennessy* v. *Boston,* 161 Mass. 502 (37 N. E. 668) ; *Moynihan* v. *Hills Co.* 146 Mass. 586 (4 Am. St. Rep. 348, 16 N. E. 574) ; *Houston* v. *Brush,* 66 Vt. 331 (29 Atl. 380) ; *Bahr* v. *Lombard,* 53 N. J. L. 233 (21 Atl. 190, 23 Atl. 167) ; *Olson* v. *Great Northern R. Co.* 68 Minn. 155 (71 N. W. 5) ; *Pennsylvania Co.* v. *Sears,* 136 Ind 460 (36 N. E. 353, 34 N. E. 15) ; *Winkelmann Drug Co.* v. *Colladay,* 88 Md. 78 (40 Atl. 1078) ; *Tennessee C. I. & Ry. Co.* v. *Hayes,* 97 Ala. 201 (12 So. 98) ; *Donnelly* v. *Booth Granite Co.* 90 Me. 110 (37 Atl. 877) ; *Haggerty* v. *Hallowell Granite Co.* 89 Me. 118 (35 Atl. 1029) ; *Sackewitz* v. *American Biscuit Co.* 78 Mo. App. 144 ; *Turner* v. *Haar,* 114 Mo. 335 (21 S. W. 737) ; *McCray* v. *Galveston, H. & S. A. R. Co.* 89 Tex. 168 (34 S. W. 95) ; *Texas & N. O. R. Co.* v. *Crowder,* 63 Tex. 502 ; *Louisville & N. R. Co.* v. *Northington,* 91 Tenn. 56 (16 L. R. A. 268, 17 S. W. 880) ; *Coelli* v. *New Jersey, etc., Con-*

42 OR.—22

*centr. Works,* 87 Hun, 428 (34 N. Y. Supp. 310); *Mulcairns* v. *Janesville,* 67 Wis. 24 (29 N. W. 565); *Folk* v. *Schaeffer,* 186 Pa. St. 253 (40 Atl. 401); *Puget Sound Iron Co.* v. *Lawrence,* 3 Wash. T. 226 (14 Pac. 869).

IV. In was negligence in the first instance on the part of the master to require the servant to shift the belt onto the pulley in question with a stick, when it could have been done with much more safety by means of a belt shifter, and the allegations in regard to the injury having been received on account of the planer on which he worked not having been supplied with a belt shifter should have been allowed to stand in the complaint: *Oregon S. L. Ry. Co.* v. *Tracy,* 66 Fed. Rep. 931 (14 C. C. A. 199); *Mayes* v. *Chicago, R. I. & P. R. Co.* 63 Iowa, 562 (14 N. W. 340, 19 N. W. 680); *Hulehan* v. *Green Bay, etc., R. Co.* 68 Wis. 520 (32 N. W. 529); *Louisville & N. R. Co.* v. *Orr,* 84 Ind. 50; *Nicholaus* v. *Chicago, etc., R. Co.* 90 Iowa, 85 (57 N. W. 694); *Thompson* v. *Great Northern R. Co.* 70 Minn. 219 (72 N. W. 962); *Walker* v. *McNeill,* 17 Wash. 582 (50 Pac. 518).

V. Witness Erickson being the millwright at the mill when the accident happened, having had long experience in that capacity, and having worked a number of weeks on this same planer and with the pulley which broke, it was competent for him to state whether the pulley was suitable and of sufficient size and strength for the purpose for which it was used, and also the cause of its breaking as it did: *Camp Point Mfg. Co.* v. *Ballou,* 71 Ill. 417; *Murtaugh* v. *New York, etc., R. Co.* 49 Hun, 456 (3 N. Y. Supp. 483); *Woods* v. *Chicago, etc., R. Co.* 108 Mich. 396 (66 N. W. 328); *Alabama C. & Coke Co.* v. *Pitts,* 98 Ala. 285 (13 So. 135).

For respondent there was an oral argument by *Mr. John M. Gearin,* with a brief over the name of *Dolph, Mallory, Simon & Gearin,* to this effect:

I. The rule of *res ipsa loquitur* is never applied to cases between master and servant where the injury complained of arises from some alleged defect in machinery or appliances which it is the plaintiff's duty to operate. The burden of

proof in all such cases is on the plaintiff to show not only the happening of the accident but at least some evidence to show negligence on the part of defendant: *Stokes* v. *Saltonstall*, 38 U. S. (13 Pet.) 181; *Railroad Co.* v. *Pollard*, 89 U. S. (22 Wall.) 341; *Gleeson* v. *Virginia Mid. R. Co.* 140 U. S. 435 (11 Sup. Ct. 859); *Texas & Pac. R. Co.* v. *Barrett*, 166 U. S. 617 (17 Sup. Ct. 707); *Higgins* v. *Fanning*, 195 Pa. St. 599 (46 Atl. 102); *Hodges* v. *Kimball*, 104 Fed. 751; *Wojcie-chowsky* v. *Spreckels S. Ref. Co.* 177 Pa. St. 57 (35 Atl. 596); *Brownfield* v. *Chicago, R. I. & P. R. Co.* 107 Iowa, 254 (77 N. W. 1038); *Pierce* v. *Kyle,* 80 Fed. 867; *Weidmer* v. *New York El. R. Co.* 114 N. Y. 462 (21 N. E. 1041); *Bishop* v. *Brown,* 14 Colo. App. 535 (61 Pac. 50); *Redmond* v. *Delta Lum. Co.* 96 Mich. 545 (55 N. W. 1004); *Phiel* v. *Albany,* 51 N. Y. Supp. 755; Thompson, Negligence, p. 1227.

MR. JUSTICE BEAN, after stating the facts, delivered the opinion of the court.

1. The plaintiff requested the court to charge the jury that "There is a rule of law that whenever a thing that causes injury is shown to be under the management of a defendant, and the accident is such as in the ordinary course of things does not happen, if those who have the management use proper care, it affords reasonable evidence, in the absence of an explanation by the defendant, that the accident arose from the want of care. So, in the case on trial, if you find that the pulley attached to the planing machine was under the management of the defendant, and that the pulley broke, which could not have happened in the ordinary course of things, if those who had the management and control of that pulley used proper care, then, if in that event there is no explanation on the part of the defendant as to breaking of said pulley, you may conclude that the breaking of the pulley arose from the want of care." This was refused, but in its general charge the court instructed the jury that "Negligence is never presumed. Plaintiff in this case has charged it, and she must prove it. It cannot be inferred, from the mere .fact that the

decedent was injured or the accident happened, that the defendant was negligent.'' The refusal to give the instruction requested, and the giving of the one quoted, constitute the principal assignments of error on this appeal, and present the question whether proof of the death of the plaintiff's intestate from the breaking of the pulley, in the absence of any explanation by the defendant as to the cause of such breaking, is itself evidence of a want of care on its part. In an action by a passenger against a carrier, proof of the injury itself is *prima facie* evidence of negligence, for the contract is to carry safely. But in an action by a servant against his master, this rule does not obtain. Before a servant can recover for an injury received by him, he must allege and prove that it was caused by the negligence of the master. It is the duty of the master to provide his servant with a reasonably safe place to work in, reasonably safe tools and appliances to work with, and to exercise reasonable care and diligence to keep them in that condition. The presumption is that he has discharged this duty, and this presumption can only be overcome by affirmative proof, either direct or circumstantial, of negligence on his part: Wood, Mast. & Serv. (2 ed.) § 382.    In some instances the circumstances attending the accident may be sufficient, if unexplained, to justify the jury in drawing an inference of negligence.    In such cases, however, the physical facts themselves are evidential, and there is what the law terms evidence of negligence, in conformity with the maxim, *Res ipsa loquitur.* But this maxim is a mere rule of evidence and not a presumption of law: *Boyd* v. *Portland Elec. Co.* 40 Or. 126 (7 Am. Electl. Cas. 661, 66 Pac. 576) ; same case, 41 Or. 336 (68 Pac. 810).    It is, as said by Mr. Justice HOLMES in *Graham* v. *Badger,* 164 Mass. 42, 47 (41 N. E. 61), ''merely a short way of saying that, so far as the court can see, the jury, from their experience as men of the world, may be warranted in thinking that an accident of this particular kind commonly does not happen except in consequence of negligence, and that therefore there is a presumption of fact, in the absence of explanation

or other evidence which the jury believe, that it happened in consequence of negligence.''

There is some controversy in the authorities as to whether under any circumstances the doctrine is applicable in an action by an injured servant against his master. But if it can be invoked in such an action at all, it is manifest that, when the servant is injured from a defect in the machinery operated by him, it can apply only where the physical facts themselves speak of the negligence of the defendant, and not, as in the case at bar, merely show the happening of the accident. The mere circumstance that a servant is injured by defective machinery or appliances used by him does not prove negligence or want of care on the part of the master: 1 Bailey, Mast. & Serv. § 1597; 20 Am. & Eng. Enc. Law (2 ed.), 87; *Simpson* v. *Locomotive Works,* 139 Pa. 245 (21 Atl. 386); *Texas & Pac. Ry. Co.* v. *Barrett,* 166 U. S. 617 (17 Sup. Ct. 707); *Patton* v. *Texas & Pac. Ry. Co.* 179 U. S. 658 (21 Sup. Ct. 275); *Wojciechowski* v. *Spreckles Ref. Co.* 177 Pa. 57 (35 Atl. 596); *Brownfield* v. *Chicago, R. I. & P. R. Co.* 107 Iowa, 254 (77 N. W. 1038); *Olson* v. *Great North. Ry. Co.* 68 Minn. 155 (71 N. W. 5.)

2. The happening of the accident may perhaps tend to show that the machinery was defective, but this alone is not sufficient to entitle the servant to recover. He must go further, and show not only that the injury resulted from a defect in the machinery, but that the defendant had notice of such defect, or by the exercise of ordinary care could have known, and was therefore guilty of negligence. "The mere fact that the machinery proves defective," says Mr. Wood, "and that an injury resulted therefrom, does not fix the master's liability. *Prima facie* it is presumed that the master has discharged his duty to the servant, and that he was not at fault. Therefore the servant must overcome this presumption by proof of fault on the master's part, either by showing that he knew or ought to have known of the defects": Wood, Mast. & Serv. (2 ed.) § 368. A master is not an insurer of the safety of his servant, and is therefore not bound to furnish absolutely safe appli-

ances or machinery. His duty in this regard is discharged
when he exercises reasonable care and caution to provide such
machinery or appliances, and to keep them in that condition,
and the presumption is that he has discharged this duty. He
is only liable for an injury to a servant-through a defect in the
machinery or appliances which was or ought to have been
known to him and was unknown to the servant; and, in an
action therefor, it is necessary for the servant to prove, not
only the defect, but the knowledge or means of knowledge
thereof on the part of the master. The law on that subject is
well settled in this court. *Kincaid* v. *Oregon S. L. Ry. Co.* 22
Or. 35 (29 Pac. 3), was an action by a servant against his mas-
ter to recover damages for injuries received on account of de-
fective appliances, wherein Mr. Justice LORD, in speaking for
the court, said: "It is not enough for the party to merely show
the injury or accident, but he must produce some evidence
tending to show that the negligence of the defendant caused it.
This is not one of the cases where proof of the accident is
*prima facie* evidence of negligence, but it is one of the cases
where the law presumes a proper performance of duty upon
the part of the defendant, and the burden is imposed upon the
plaintiff to show its negligence in reference to the particular
matter alleged in producing the injury." And in *Nutt* v.
*Southern Pac. Co.* 25 Or. 291 (35 Pac. 653),—a similar case,—
the same justice says: "The defendant is not a guarantor that
the tools, implements, or other appliances which it provides for
the use of its employes are absolutely safe or free from all de-
fects. Neither individuals nor corporations are bound to
insure the absolute safety of the instrumentalities which they
furnish their employes for use in their employment. Their
duty is discharged when they exercise reasonable care and dili-
gence in providing their employes with reasonably safe tools
and appliances with which to work." To the same effect, see
*Walsh* v. *Oregon Ry. & Nav. Co.* 10 Or. 250; *Knahtla* v. *Ore-
gon S. L. Ry. Co.* 21 Or. 136 (27 Pac. 91). There was there-
fore no error in instructing the jury that the plaintiff must
prove the negligence alleged, or in refusing to instruct that the

breaking of the pulley, if unexplained by the defendant, was itself evidence of the want of care on its part.

3. It is also contended that the court erred in striking from the complaint the allegation that the defendant failed to provide a belt shifter or other suitable appliance for transferring the belt from the loose to the tight pulley. There is no allegation as to what would be a suitable appliance for that purpose, or that there was one any better than that actually used by the deceased, or, indeed, that the accident was caused by the defendant's failure to furnish a suitable belt shifter. The deceased was supplied with an instrument for that purpose which seems to have been safe and suitable when properly used, and, as there is no averment that he made any objection to its use, the defendant is not liable because it failed to furnish a better one. It is not the duty of the master to furnish the best or latest appliances for the use of his servant. He may conduct his business in a manner most agreeable to himself, using either old or new machinery; and an employe who enters his service with knowledge of the circumstances attending the employment cannot complain of his master's customs or habits, nor recover for injuries sustained in and resulting from that particular service. If the machinery and appliances are such as are ordinarily used, and reasonable care is exercised to see that they are safe and suitable for the purposes intended, and are kept in proper condition, so that no harm results to the servant for want of repair, the master's responsibility in the premises ceases, and he is not liable to an employe for injuries happening to him in the use of such machinery and appliances: 20 Am. & Eng. Enc. Law (2 ed.), 77; Wood, Mast. & Serv. (2 ed.) § 331; 1 Bailey, Mast. & Serv. § 68.

4. Upon the trial one Erickson was called as a witness for the plaintiff, and testified that he was a millwright employed by the defendant at the time of the accident; that his duty was to repair and look after the pulleys, except those on the planer; and that he examined the broken pulley after the accident, but was not present at the time. He was thereupon asked to state his opinion as to what caused the pulley to break, and the

refusal of the court to permit him to answer is assigned as error. If the opinion of the witness upon this question was competent at all, which is at least doubtful (*Houston* v. *Brush,* 66 Vt. 331, 29 Atl. 380), it was because he was an expert, and entitled to testify as such. But there was no evidence that he possessed any special knowledge upon the subject. He had not had any experience in the manufacture of ironwork, or in testing machinery of that kind, and therefore there was no abuse of discretion in refusing to permit him to express an opinion upon a question of such importance in the case.

5. One Wilson, who was employed by the defendant on the night shift about the time of the accident, was asked as to whether he had ever known any of the pulleys on the planers in the defendant's mill to be tested by tapping with a hammer, and it is insisted that the court erred in refusing to allow him to answer. The evidence shows that the witness went to work at 7 o'clock in the evening, and quit about 6 in the morning, and therefore the fact that he had never seen the pulleys tested is no evidence that a proper inspection and examination thereof had not been made.

6. Mr. Inman, the president of the defendant corporation, testified, among other things, that the pulley and belt on the planer operated by the deceased had been running for about four years, and that during that time no accident of any kind had occurred. He was thereupon asked on cross-examination whether it was not a fact that there had been at least two men killed and two or three others crippled or injured in his mill during the last three or four years. Error is assigned on the ruling of the trial court in sustaining an objection to this question. This was manifestly improper cross-examination. Mr. Inman's testimony in chief was confined to the planer in controversy, and no rule of law of which we have any knowledge would permit the plaintiff to extend the inquiry to embrace the history and circumstances of all the accidents happening in the mill during the four years previous to the trial. The judgment of the court below is affirmed.        AFFIRMED.