Argued 25 January, decided 27 March, 1906.

**BLUST *v.* PACIFIC TELEPHONE CO.**

84 Pac. 847.

MASTER AND SERVANT—DUTY TO FURNISH APPLIANCES.

1. Though a master is under an obligation to use due care in providing suitable and safe materials and appliances, he is not bound to provide the most improved appliances, and his duty is discharged when he has furnished appliances that are reasonably safe and suitable when properly used.

DUTY TO MAKE RULES—HANGING TELEPHONE CABLES.

2. Under some conditions it becomes the duty of the master to make and enforce suitable rules for the government of his employees in doing certain work, but not when the work is simple and the use of the appliances obvious, as, in putting up telephone cables by wire ropes and hooks.

ASSUMPTION OF KNOWN RISK.

3. An experienced lineman, familiar with the methods and appliances usually used in stringing wires and cables on poles, and particularly with the method used by a particular employer, who returns to work and continues with that employer without objection to the method in use, assumes the risk of that manner of doing the work.

From Multnomah: ALFRED F. SEARS, JR., Judge.

John A. Blust appeals from a judgment of nonsuit in an action for damages brought by him against the Pacific States Telephone & Telegraph Co.                    AFFIRMED.

For appellant there was a brief over the name of *Veazie & Freeman,* with an oral argument by *Mr. Frank Forrest Freeman.*

For respondent there was a brief over the name of *Carey & Mays,* with an oral argument by *Mr. Charles Henry Carey.*

MR. CHIEF JUSTICE BEAN delivered the opinion.

This is an action to recover damages for a personal injury received by the plaintiff while in the employ of the defendant. On October 13, 1903, he was engaged with other employees in putting up a telephone cable in the City of Portland, and while at work was knocked or thrown from the pole upon which he

was working to the ground by the cable falling and striking him. The cable was about 1,000 feet long, and consisted of 100 pairs of copper wires incased in a sheathing of lead, and weighed from two to three pounds to the linear foot. It was brought to the place of work wound on a reel, and the manner of putting it up was as follows: A wire rope, called a "messenger," was first strung taut 25 feet from the ground on poles 150 feet apart, to support the cable after it was in place. A snatchblock was attached to one of the poles near the messenger, some distance in advance of where it was proposed to commence hanging the cable. A rope passed from a windlass on the ground through the snatchblock along the poles, and was attached to the end of the cable, by means of which it was unwound from the reel and drawn along under the messenger by the persons operating the winch or windlass. From the reel to the pole nearest it was a lead wire, to support the cable until it reached the mes senger. As the cable was unwound from the reel, one of the crew attached to it, by means of pieces of rope or marline, wire hooks at intervals of 10 or 15 feet, which hooks were placed over the lead wire to support the cable temporarily as it was being drawn up to and along the messenger; but after it was in place it was firmly hung from the messenger by clips about two feet apart. The wire and marline from which the temporary hooks and supports were made were furnished by the defendant, and cut into suitable lengths and made into proper shape by the employees engaged in the work. Two men were stationed on the pole nearest the reel to lift the hooks from the lead wire to the messenger, and an employee was stationed on each of the poles between the reel and the snatchblock to lift the hooks over the steps on the poles as the cable was being unwound. In putting up this particular cable the plaintiff worked for a time at the first pole to assist in passing the hooks from the lead wire to the messenger, and therefore knew the interval between the hooks and the manner in which they were attached to the cable. He was subsequently transferred to the pole nearest the snatch-block. When the end of the cable reached the snatchblock, he came down from the pole by the direction of the foreman, as he

supposed, to go up the other pole and detach the snatchblock, so it could be moved farther along. About the time he reached the ground, however, he saw Sloper, another employee and a member of the crew, go up the pole and remove the snatchblock, and he thereupon climbed up his own pole under the cable and was in the act of fastening his safety belt around the pole, when the supports of the cable gave way, causing it to fall on him, throwing him to the ground, and injuring him severely. When Sloper removed the rope from the snatchblock he did not fasten it to the step or the pole to keep the cable from slipping back.

The plaintiff was an experienced lineman and had been engaged in that business for three or four years. He had worked for the defendant a considerable portion of the time, and had assisted in putting up cables in the same manner, with the same appliances, and under the same system as at the time of the accident. He commenced work for the defendant the last time about a week before the accident, and knew the method and appliances used by it in stringing its cables, and was familiar with the manner in which the work was done, and with such knowledge entered its employment. There was evidence tending to show that other, and perhaps safer, methods and appliances were sometimes used by telephone companies in stringing their cables, such as a sheave having an iron frame to which the cable was attached, or hooks made of hard wire or tempered steel fastened to the cable by a clamp or wooden sheave to run on the messenger and attached to an iron frame having a hook at the bottom in which the cable was placed and tied with marline; but there was no evidence that the hooks and marline as furnished by defendant were not such as the usage of the business sanctioned as reasonably safe when properly used. Expert testimony was offered and admitted to the effect that the hooks and marline, as placed on the cable at the time of the accident, were not sufficient to support it, but should have been more securely fastened and placed nearer together. At the close of the plaintiff's testimony, the court held that the evidence was insufficient to entitle him to recover, and granted an involuntary nonsuit.

The negligence charged is: (1) That defendant failed and neglected to provide suitable pulleys or supports for the cable while it was being put up, but carelessly and negligently furnished the workmen with unsafe, improper and unsuitable appliances and material; (2) that defendant failed and · neglected to make and promulgate safe and proper rules and regulations touching the use of the supports or to instruct the workmen in reference thereto; and (3) that defendant carelessly and negligently employed incompetent and unskillful fellow servants.

1. It is unquestionably the duty of a master to use due care to provide suitable and safe materials, appliances and machinery reasonably well adapted to the work in hand, without endangering the lives and limbs of those employed to use the same, but he is not bound to provide the latest or most improved, but only such as are reasonably safe, and of a kind generally used for the purpose. If the appliances furnished or the method adopted by the master is reasonably safe and suitable for the purpose intended, he is not liable for a failure to furnish or adopt others believed by some to be less perilous: *Kincaid* v. *Oregon Short Line Ry. Co.* 22 Or. 35 (29 Pac. 3); *Nutt* v. *Southern Pac. Co.* 25 Or. 291 (35 Pac. 653); *Duntley* v. *Inman,* 42 Or. 334 (70 Pac. 529, 59 L. R. A. 785); *Indiana Car Co.* v. *Parker,* 100 Ind. 181; 1 Labatt, Mast. & Serv. 35-39. And, where a master discharges his duty by furnishing suitable appliances and material for the workmen, he is not responsible for the negligent use thereof by them: *Conner* v. *Draper Co.* 182 Mass. 184 (65 N. E. 39); *Hackett* v. *Masterson,* 84 N. Y. Supp. 751. Now, in this case, the hooks and marline furnished by defendant for the support of the cable while it was being put up were suitable and safe and entirely sufficient for the purpose, if they had been properly used. The cable fell, not because of an inherent defect in the appliances, but because the workmen neglected to put the supports sufficiently near together as the cable was being unwound from the reel, and for this negligence the defendant is not responsible.

2. But it is argued that it was the duty of the defendant to

promulgate and enforce rules and regulations governing the matter of attaching the hooks or supports to the cable, and providing the distances they should be apart.  When the business in which the master is engaged is complicated or dangerous, or where the employees work in different departments or at different sorts of work, and the safety of one depends upon the performance of the duties of another at stated times or in a particular manner, it is the duty of the master to provide and enforce suitable rules and regulations governing their conduct and that of the business: 1 Labatt, Mast. & Serv. 210; 2 Current Law, 818; *Voss* v. *Delaware, L. & W. R. Co.* 62 N. J. Law, 59 (41 Atl. 224).  But when the duties to be performed by the servants are simple and the appliances easily understood, rules are not required: *Olsen* v. *Northern Pac. Lum. Co.* 100 Fed. 384 (40 C. C. A. 427); *Wagner* v. *Portland,* 40 Or. 389 (60 Pac. 985, 67 Pac. 300); *Johnson* v. *Portland Stone Co.* 40 Or. 436 (67 Pac. 1013, 68 Pac. 425); *Boyer* v. *Eastern Ry. Co. of Minn.* 87 Minn. 367 (92 N. W. 326); *Wagner* v. *N. Y., etc. R. Co.* 76 App. Div. 552 (78 N. Y. Supp. 696).  Now, there was nothing in the nature of the work in which plaintiff and his fellow servants were engaged at the time of the accident which required a rule providing how frequently the supports should be attached to the cable, or the manner in which the work should be performed.  That was a mere detail left entirely to the judgment and discretion of the workmen.  They were at liberty to attach the supports to the cable in such manner, and as close together as they thought proper, and if they were careless or negligent in that regard, the defendant is not responsible, and it was not a matter for it to regulate by rules.  For these reasons we do not think the plaintiff can recover.

3. But there is another and equally as fatal defect in his case.  The evidence shows that he was an experienced lineman.  He had worked at that business for several years, and was accustomed to putting up cables of the kind which he was at work on when injured.  He was familiar, not only with that character of work in general, but with defendant's manner of doing it in particular.  He had previously worked for the defendant, and

with knowledge of the appliances used by it in stringing cables, and with the manner in which the work was conducted, he voluntarily re-entered its employment. If, therefore, it be conceded that there is some evidence tending to show that the defendant failed to exercise ordinary care to furnish reasonably safe appliances for the support of the cable or to promulgate suitable rules for the conduct of the work, the case is ruled by the established principle that a servant entering or continuing in the employment of a master, with knowledge of the defective appliances used by him or the imperfect method of his work, without objection or complaint, assumes the added risk caused thereby, and cannot recover for an injury resulting from the use of such defective or insufficient method: *Stone* v. *Oregon City Mfg. Co.* 4 Or. 52; *Scott* v. *Oregon Ry. & Nav. Co.* 14 Or. 211 (13 Pac. 98); *Brown* v. *Oregon Lum. Co.* 24 Or. 315 (33 Pac. 557); *Tucker* v. *Northern Term. Co.* 41 Or. 82 (68 Pac. 426); *Greene* v. *Western Union Tel. Co.* (C. C.) 72 Fed. 250. "The general rule of law is," says Mr. Chief Justice LORD, in *Brown* v. *Oregon Lum. Co.* 24 Or. 315 (33 Pac. 557), "that a servant assumes all the risks ordinarily incident to his employment, and also all additional or unusual risks which he may knowingly and voluntarily undertake. It is one of the implied conditions of every contract for employment that the servant is competent to discharge the duties for which he is employed: Wood, Mast. & Serv. 166. In accepting service, he not only assumes the risks reasonably to be anticipated as incident to it; but he also assumes that he has the capacity to understand the nature and extent of such service, and has the requisite ability to perform it."

A servant who voluntarily enters the employment of another, with knowledge of the defective appliances or methods used by that other, cannot be heard to say that he did not appreciate or realize the danger, where the defect was obvious and the danger would have been known and appreciated by an ordinarily prudent person of his intelligence and experience: *St. Louis Cordage Co.* v. *Miller*, 126 Fed. 495 (61 C. C. A. 477, 63 L. R. A. 551). There was nothing intricate or complicated about the work in which plaintiff was engaged. The appliances furnished

and used to support the cable, and the manner of doing the work were open and visible, and the danger incident thereto obvious to a person of plaintiff's intelligence and experience. It was plain and certain to an observing person that, if the cable was not properly supported by hooks attached sufficiently near together, it would fall and might injure the workmen, and without a disregard of the established rules of law there seems no escape from the conclusion that plaintiff, by voluntarily entering and continuing in the employment of the defendant, with knowledge of the appliances used and the system adopted by it without complaint, assumed the risk of the injury he sustained. As we understand the record, no particular claim is made that the injury to the plaintiff was due to the act of an incompetent fellow servant. It is true that Sloper, who removed the rope from the snatchblock, was a "groundman." He had not yet "graduated" into a lineman, but the evidence does not show that his failure to fasten the rope to the step or the pole was the proximate cause of the injury. Moreover, the plaintiff was a witness to Sloper's act, and thereafter voluntarily reascended the pole at which he had been working, and so assumed the danger, if any, from Sloper's failure to fasten the rope.

From these views it follows that the judgment must be affirmed.        AFFIRMED.