Argued June 26, decided July 8, 1913.

# HAGERMANN *v.* CHAPMAN TIMBER CO.*

### (133 Pac. 342.)

**Master and Servant—Personal Injuries—Instructions—Negligence.**

1. In a servant's action for injuries, alleging three elements of negligence, requested instructions, requiring the plaintiff to prove "negligence in the respects charged in the complaint," were properly refused, since proof of only some of the allegations of negligence might have been sufficient to charge the defendant.

> [As to the liability of an employer to his employee resulting from defective machinery and appliances, see note in 98 Am. St. Rep. 289.]
>
> [As to the right of recovery by employee accepting extra-hazardous duties, see note in 97 Am. St. Rep. 884.]

**Master and Servant—Personal Injuries—Instructions—Issues.**

2. In a servant's action for injuries, alleging negligence in attaching the pulley of a trip-line to a tree not of sufficient strength for that purpose and afterward removing it, leaving the tree in a tottering condition, defendant was entitled to an instruction that if the trip-line was not at any time attached to the tree, the charge of negligence in attaching it to the tree, subjecting it to a severe strain and leaving it in a tottering condition, should not be considered in determining defendant's negligence.

**Master and Servant—Personal Injuries—Instructions—Ordinary Care and Negligence.**

3. In a servant's action for injuries from defendant's alleged negligence in attaching the pulley of a trip-line to a tree not sufficiently strong for that purpose because weakened and burned at the root, where the court in general terms defined ordinary care and negligence, defendant was entitled to an instruction that, although the tree was left standing in a weakened and tottering condition after removing the trip-line, plaintiff must prove by a preponderance of the evidence that defendant actually knew that it was dangerous, or that the condition of peril existed for such length of time that by ordinary care he should have been aware of the dangerous condition of the tree; such instruction giving a concrete application of the principles to the testimony of the case.

**Trial—Instructions—Preponderance of Evidence.**

4. Under the express provisions of Section 868, Subdivision 5, L. O. L., the jury are to be instructed, on all proper occasions, that

---

*As to the assumption of risk of dangers created by the master's negligence, which might have been discovered by the exercise of ordinary care on the part of the servant, see note in 28 L. R. A. (N. S.) 1250. And for servant's assumption of risk of danger imperfectly appreciated, see note in 4 L. R. A. (N. S.) 990.—REPORTER.

in civil cases the affirmative of the issue shall be proved, and that
when the evidence is contradictory, the finding shall be according to
the preponderance of the evidence.

**Master and Servant—Personal Injuries—Instructions—Assumption of
Risk.**

5.   In a servant's action for injuries from the falling of a tree in
logging operations, where nothing was said in the general charge
about the effect assumption of risk would have upon the verdict, the
defendant was entitled to a charge correctly stating the law of as-
sumption of risk.

**Master and Servant—Master's Liability—Assumption of Risk.**

6.   Where a servant was as well aware of the danger of doing
work under existing conditions as the master was, and such danger
was open and discoverable by ordinary care, the servant continuing
to work in the dangerous place assumed the risk of the employment,
and could not recover for injury from such danger.

From Multnomah: HENRY E. McGINN, Judge.

Statement by MR. JUSTICE BURNETT.

This is an action by Ary Hagermann, an employee,
against the Chapman Timber Company, a corpora-
tion, to recover compensation for injuries received
while in the service of his employer, and alleged to be
due to the negligence of the latter.   By the complaint
it appears, in substance, that when the alleged in-
juries happened the defendant was engaged in log-
ging in the forests of Columbia County, using for that
purpose a donkey engine and the accompanying ap-
pliances.   On the engine were two drums revolving
in opposite directions, upon one of which was wound
a large steel cable some 2,500 feet long, about 1½
inches in diameter, and weighing approximately two
tons.   To the other drum was attached a smaller
cable called a "trip-line."   These two cables were
united at the outer ends and roved through a pulley,
denominated by the plaintiff a "head block," made
fast in the woods about the length of the large cable
from the engine.   When the machine was operated
so as to pay out the cable from its drum, the other
drum would wind up the trip-line, in which process

the cable would be drawn out to the head block. In this position a log would be attached to the cable by means of a short cable called a "choker." Then, the engine being reversed so as to pay out the trip-line and wind up the cable, it would snake the log from the woods to the log dump along a way previously cleared for that purpose. In order to prevent the line from becoming entangled in the woods, it was necessary to suspend it by pulleys to trees and stumps along the line, so that it would work freely in its function of drawing out the cable to the head block. Necessarily, in that process, the great weight of the cable made considerable strain on these pulleys and the trees or stumps to which they were attached. The plaintiff was employed in this work as a "rigging slinger." His duties were to attach the choker to the log and follow it some distance in its course to the dump, to see that the log was not stopped, nor the rigging fouled.

The complaint avers three elements of negligence. The first was that the defendant, acting through its foreman, attached one of the pulleys of the trip-line to a cedar tree, which was not of sufficient strength for that purpose, and which was loosened and weakened by the logging operations, and left in a tottering and unsafe condition near the pathway where the plaintiff was required to work, and that without plaintiff's knowledge the foreman removed the support of the trip-line from the tree, leaving it in an unsafe condition; second, that the tree had been rendered dangerous and unsafe by having its roots burned by a fire in the timber, so as to greatly weaken the tree, and that the defendant knew, or by the exercise of ordinary care should have known, the dangerous condition of the tree on account of the fire, while the plaintiff had no knowledge or information on the subject until after the happening of the injury; third,

that the defendant, acting by its agents and servants, over whom the plaintiff had no control, operated the trip-line in a careless, dangerous, and reckless manner so that one of the pulleys supporting it broke loose, the result being that it dragged on logs lying in the woods, catching one of them and throwing it with great force against the cedar tree before mentioned. The complaint groups these three elements, and declares, in substance, that by reason of all of them the place in which the plaintiff was required to work was dangerous and unsafe, and that on July 11, 1910, on account of all the foregoing ingredients of negligence, combined with the wind blowing through the woods, the tree was thrown down upon the plaintiff, causing the injuries for which he seeks to recover compensation.

The answer traversed the complaint in all particulars charging negligence or liability upon the defendant, and alleged that no rigging or tackle had ever been attached by the defendant to the tree in question; that the same fell or was blown down through natural causes, so that the injury happening to the plaintiff was an unavoidable accident, and could not have been obviated by the defendant by the exercise of ordinary care. For a second affirmative defense the defendant averred that the plaintiff was an experienced rigging man, and from long experience in logging operations knew the hazard and danger of work in the woods under the conditions prevalent at the time and place of the accident, and with such knowledge assumed the risk, and continued to work in the vicinity of the tree without remonstrance or complaint, having had an equal opportunity with the defendant to ascertain the true conditions of the situation.

The new matter in the answer was traversed by the reply. A jury trial resulted in a verdict and judg-

ment for the plaintiff, from which the defendant appeals.    REVERSED.

For appellant there was a brief over the names of *Messrs. Griffith, Leiter & Allen* and *Mr. F. J. Lonergan,* with an oral argument by *Mr. Rufus A. Leiter.*

For respondent there was a brief over the names of *Mr. John F. Logan,* and *Mr. Isham N. Smith,* with an oral argument by *Mr. Smith.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1. The errors relied upon at the hearing were predicated solely upon the refusal of the trial court to charge the jury as requested by the defendant in certain particulars. Three of these requests, viz., those about the mere happening of an accident, the burden of proof, and the negligence of the defendant being the proximate cause of the injury, are connected with the proposition that the plaintiff is required to prove "negligence in the respects charged in the complaint." These requests in the form proposed were properly refused by the trial court because they all apparently require the plaintiff to prove all the allegations of the complaint about negligence, whereas proof of only some of them might have been sufficient to charge the defendant. For instance, it might have been true that the defendant was not responsible for the weak condition of the cedar tree, and could not possibly have discovered it by the exercise of reasonable diligence, and yet it might have been also true that it was negligent in allowing the trip-line to drag upon and throw the log against the tree, knocking it down upon the plaintiff. In effect, the complaint contains three counts of negligence, so that it was not absolutely necessary for

the plaintiff to prove all of them, as contemplated by the wording of the instructions mentioned. Instructions to the effect that the mere happening of an injurious accident alone would not of itself impute liability to the defendant, that the negligence of the defendant in the respects charged, or some one or more of them, must be shown to be the proximate cause of the injury, coupled with some such definition of proximate cause, as defendant requested, and that the plaintiff must prove the negligence charged by a preponderance of the evidence in the respects charged in the complaint, or some of them, would have been quite apropos, but the instructions requested on these points were all affected by the vice of requiring the plaintiff to prove all the counts of negligence when one might have been sufficient.

2. On the other hand, the defendant requested the court to instruct the jury as follows: "If you find from a fair preponderance of the evidence that said trip-line or said trip-line block, was not at any time by defendant ever attached or fastened to the tree which fell upon the plaintiff, then I instruct you that the charge of negligence in attaching said trip-line to said tree, subjecting said tree to a severe strain, and in thereafter removing said trip-line from said tree, leaving the same in a tottering condition, should be wholly ignored by you and not considered in determining whether or not defendant was negligent." The plaintiff chose to make this one of the separate elements or counts of negligence with which he charged the defendant. It became by his election an issuable fact to be determined by the jury, and the defendant was entitled to have this instruction on that point.

3, 4. Another request was to the effect that, although the tree was left standing in a weak and tottering condition after removing the trip-line and its support, plaintiff must prove by a preponderance of

65 Or.—38

the evidence that defendant actually knew that the tree was dangerous, or that the condition of peril existed for such a length of time that the defendant, in the exercise of ordinary care under the circumstances, should have known of the hazardous condition of such tree. There was also a similar request based on the testimony about the tree being burned at its roots. These requests were likewise refused. The court in very general terms in its charge to the jury defined ordinary care and negligence, but gave no concrete application of the principle to the testimony in the case, and was utterly silent about the requirement of the statute that the finding of the jury shall be according to the preponderance of evidence: Section 868, subd. 5, L. O. L. These instructions would have more clearly pointed out the application of the principle to the issue involved, and should have been given. Within reasonable limits, parties are entitled to have their theory of the evidence presented to the jury by proper instructions applicable to the case in hand, for jurors are not always enlightened by mere generalities.

5, 6. Lastly, the Circuit Court refused to give to the jury this instruction:

"If you find from the evidence that at the time plaintiff was hurt, he was just as well aware of the danger of doing said work under the conditions existing at said time as his employer was, and that such danger was open and obvious, and could have been discovered by the plaintiff by the use of ordinary care, then I instruct you that Hagermann assumed the risk and cannot recover, and your verdict should be for the defendant."

Considerable was said in the charge about assumption of risk, but nothing about the effect it should have upon the verdict. The request last quoted covered this point, and, if given, would have cured the

defect of the general charge in that respect.   This request to charge is a correct statement of the law of assumed risk, as the same existed prior to the initiative act of November, 1910, requiring that "all owners, contractors or subcontractors and other persons having charge of, or responsible for, any work involving a risk or danger to the employees or the public, shall use every device, care and precaution which it is practicable to use for the protection and safety of life and limb. * * *" It is founded upon the principles that both employer and employee are bound by the rule of taking ordinary care to avoid accidents, and that if the danger is apparent to and is understood by the plaintiff, and he continues to work in the dangerous situation, he assumes the risk of the employment, and cannot complain if he is injured in the prosecution of the work.   Under all the precedents of the law as it stood at the time, the defendant was entitled to the instruction: *Roth* v. *Northern Pac. L. Co.,* 18 Or. 205 (22 Pac. 842); *Blust* v. *Pacific Tel. Co.,* 48 Or. 34 (84 Pac. 847); *Westman* v. *Wind River Lumber Co.,* 50 Or. 137 (91 Pac. 478).

In the matters indicated the court was in error, and the judgment is reversed.          REVERSED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE MOORE and MR. JUSTICE RAMSEY concur.