# THE SUPREME COURT

OF

# OREGON.

## OCTOBER TERM, 1891.

[Filed July 8, 1891.]

### *GEORGE B. WILD v. OREGON SHORT LINE, ETC., RY. CO.

PLEADING — GENERAL AND SPECIFIC STATEMENTS.— A general introductory statement or a general conclusion in a pleading, always yields to a specific statement of the facts.

PLEADING — NEGLIGENCE — FELLOW-SERVANT.— An allegation which directly imputes negligence and carelessness to the defendant in causing a locomotive to run against a car upon which the plaintiff was at work, causing it to move and himself to be thrown down whereby he was injured, is a charge of negligence made directly upon the defendant itself, and not merely upon its servants. The negligence of a co-servant with the plaintiff, engaged in a common service, cannot be said to be the negligence of the defendant.

PLEADING — NEGLIGENCE — EVIDENCE.—Where carelessness and negligence in causing and permitting a locomotive to run against the place at which the plaintiff was at work are directly imputed to the defendant whereby he was injured, such allegation is broad enough to admit evidence of all kinds and grades of negligence on the part of the defendant which resulted from causing and permitting the locomotive to run down on the place where the plaintiff was at work, and thereby rendering it unsafe and causing the injury.

NEGLIGENCE — FAILURE TO PROVIDE RULES.—This would include the failure to provide such rules or to adopt such precautionary measures as are needful to regulate or oversee the running of locomotives upon the tracks

---

* Rehearing denied October term, 1891.

and switches of the yard as would render the place of employment upon cars on the tracks reasonably safe.

SERVANT'S RISK—FELLOW-SERVANT—DUTY OF MASTER.—While the servant assumes the risks ordinarily incident to his employment and all open and visible risks, including the negligence of a fellow-servant, yet he has a right to presume that the master will exercise due care for his safety by providing, when necessary, all needful rules for the conduct of its business, or such precautionary regulations as will not needlessly expose him to risks not necessarily resulting from his occupation.

DEFECTIVE COMPLAINT—SUFFICIENCY AFTER VERDICT.—Where it is not certain from the allegation in what the negligence imputed to the defendant consists, such defect is not fatal to the sufficiency of the complaint after trial, but it is to be corrected by a motion to make the allegation more specific.

QUESTIONS OF FACT—EFFECT OF EVIDENCE—PROVINCE OF JURY.—Whether certain precautions taken were sufficient under the evidence, or whether under it there were ever promulgated or established any precautions designed to meet the exigency and dangers of the situation, as well as the care exercised by the plaintiff at the time of the injury, are questions of fact for the jury to determine under all the circumstances of the case.

AMENDMENTS DURING TRIAL—REMOVAL TO U. S. COURT.—Where the plaintiff inadvertently omitted to insert an allegation of incorporation, but the existence of the corporation is not the substance or gist of the action, and its name is such as to import a corporation, and the defendant, appearing as such, filed an answer verified by its agent, such allegation being merely formal, the court committed no error, after the evidence for the plaintiff had been submitted, in allowing the plaintiff to amend by inserting such incorporation, nor in refusing at such time to allow the defendant to file a new answer raising different issues, when there was no claim of surprise, inadvertence or mistake. Nor was it error to refuse the removal of the cause at such time to the United States court.

SPECIAL VERDICT—DISCRETION OF COURT.—The giving or refusing to submit special findings to the jury is in the discretion of the court.

Wasco county: JAMES A. FEE, Judge.

Defendant appeals.    Affirmed.

*W. W. Cotton,* and *Gilbert & Snow,* for Appellants.

*A. S. Bennett,* for Respondent.

LORD, J.—This is an action to recover damages for personal injuries, alleged to have been sustained by the plaintiff while in the employ of the defendant. The defense was that the injury was caused by the negligence of a co-servant, and contributory negligence.

While there are some minor questions to which we shall

subsequently advert, the two controlling questions presented
are: (1) that the complaint fails to state a cause of action,
and (2) that the evidence fails to disclose any negligence for
which the defendant is responsible.    Both of these objec-
tions were taken by instructions, and the latter, also, by
motion for a nonsuit, which was overruled.    The complaint
shows that the plaintiff was a car repairer, and that the
accident occurred at the car and repair shops by negli-
gently causing and permitting a locomotive to run against
a car which was standing on one of the switches connected
with the yard while the plaintiff was standing upon such
car and assisting to unload it.    The locomotive was one
that was used upon the switches of the yard for moving
·cars to be repaired, and for such other purposes as was
needed.    The complaint then proceeds to allege, "that while
the plaintiff was working upon or about said car, as herein-
before alleged, the defendant failed to provide, preserve and
secure a safe place for him to work, but negligently and
carelessly caused and permitted a locomotive and cars then
upon its tracks to run up against the car upon which the
plaintiff was working as aforesaid, with great violence,
whereby the car upon which the plaintiff was working was
caused to move and the plaintiff was thrown down" and
injured.    The defendant is a railroad corporation as its
name imports and necessarily conducts its business through
agents and servants.    So that, upon whomsoever it devolved
any of its personal duties as master, such as furnishing
appliances, selection of competent servants, or of providing
reasonable regulations for the safety of those in its service,
or at the places in which they work, was an agent or rep-
resentative of the company, and for any dereliction in the
performance of such duties resulting in injury, the defendant
is liable.

The complaint charges that the "defendant failed to
provide a safe place for the plaintiff to work," and then
proceeds to specify the negligent acts which caused the
injury, namely, that the "defendant negligently and care-

XXI OR.—11.

lessly caused and permitted a locomotive and cars then upon its tracks to run against the car upon which the plaintiff was working, with great violence, whereby the car upon which the plaintiff was working was caused to move, and the plaintiff was thrown down," etc., and injured. The general statement, that the defendant failed to provide a safe place for the plaintiff to work, is not of controlling importance, for the specific statement which follows it is the one which governs. "A general introductory statement or a general conclusion will always yield to a specific statement of the facts." (*Indianapolis R. R. Co.* v. *Johnson*, 102 Ind. 354.)

This specific statement of the facts is the ground upon which negligence is imputed to the defendant, and upon which the plaintiff's right of recovery is based. There is no doubt that the particular acts alleged were intended to touch the place of service, and to show that it was rendered unsafe by reason thereof, but they do not affect the place of employment as the proximate cause of the injury. The place provided for the plaintiff to work was not of itself an unsafe place, and as such could not be the producing cause of the injury. The allegation shows that the negligence which caused the injury was either in the careless running of the locomotive or the failure to regulate its operation which rendered a safe place unsafe to work. As the place itself was not unsafe upon the facts as alleged, nor the proximate cause of the injury, but only rendered unsafe by extraneous acts or omissions, it can constitute no ground of liability. Whether, then, there is a cause of action stated, depends upon conclusions arising from the allegation under immediate consideration. This allegation directly imputes negligence and carelessness to the defendant in causing and permitting a locomotive to run against the car upon which the plaintiff was at work, causing it to move and himself to be thrown down and injured. It is plain that the negligence intended to be charged, and which was the producing cause of the injury, was due to some fault of the

master and not of the servant.    It excludes the assumption
that the injury was caused by the negligence of a co-servant
with the plaintiff engaged in a common service, for the
charge of negligence is made directly upon the defendant
itself and not merely upon its servants.    In short, the
negligence of a co-servant with the plaintiff engaged in the
same general undertaking could not be said to be the
negligence of the defendant.

But in and by what acts or omissions the negligence
imputed to the defendant consisted in causing and permit-
ting the locomotive to run against the car upon which the
plaintiff was at work, is not disclosed.    The facts upon
which he predicates his charge of negligence are stated, but
it is not certain from the allegation of them in what
the alleged carelessness and negligence consisted.    If the
defendant should by the agency of careless or incompetent
servants knowingly operate its locomotive upon the tracks
and switches of the yard, and they should negligently run
the locomotive against the car or place at which the plaintiff
was at work, and injure him, has not the defendant "negli-
gently and carelessly caused and permitted a locomotive to
run against a car upon its tracks upon which the plaintiff
was at work," etc., or place and rendered it unsafe to work
there, while the defendant permits the locomotive to be
operated by such persons?    Or if the defendant should fail
to provide such rules and regulations for the management
of its engines upon the tracks and switches of the yard as
were necessary to insure reasonable safety in the places of
service upon or about cars upon its tracks that were being
unloaded or repaired, or to adopt such precautionary meas-
ures as were needful to notify or apprise those operating its
engines of the proximity of the place of employment, so
as to render it safe from collision, has not the defendant
"negligently and carelessly caused and permitted its loco-
motive to run against the car" or place at which the plaintiff
was at work and rendered it an unsafe place to work with-
out such rules regulating or such precautionary measures

guarding the running of its locomotives? In the one case the negligence of the defendant consists in knowingly operating the engine by the agency of careless or unskillful servants, which rendered the place of service unsafe; but in the other the negligence of the defendant consists in the omission to prescribe such rules or to adopt such precau-. tionary regulations as were necessary to regulate or guard the running of the locomotive upon the switches in the yard as would render the place reasonably safe when controlled by careful and competent servants. As the first case is suggested merely, it may be dismissed without further consideration, as there is no evidence to support it.

It is upon the other that the plaintiff wholly bases his right of recovery and to which the evidence is directed. It is upon this aspect of it, then, that the sufficiency of the allegation as stating a cause of action must be tested. Carelessness and negligence in causing and permitting a locomotive to run against the place at which the plaintiff was at work, are directly imputed to the defendant whereby he was injured. The language of this allegation is broad enough to admit evidence of all kinds and grades of negligence on the part of the defendant which resulted from causing or permitting the locomotive to run down upon the place where the plaintiff was at work, and thereby rendering it unsafe and causing the injury. This would include the failure to provide such rules or to adopt such precautionary regulations as were needful to regulate or oversee the running of the locomotives upon the tracks and switches of the yard as would render the place and employment reasonably safe. While a servant assumes the risks ordinarily incident to his employment, and all open and visible risks, including the negligence of a fellow-servant, yet he has a right to presume that the master will exercise due care for his safety by providing when necessary all such needful rules for the conduct of its business, or such precautionary measures as will not needlessly expose him to risks not necessarily resulting from his employment. This being

so, we hold the language of the complaint broad enough to cover the negligence imputed to the defendant. Nor does this work any hardship. ·If it had desired a more specific statement of the negligence imputed to it, that end could have been attained by a motion to make the allegation more specific; but the defect is not fatal to the sufficiency of the complaint as stating a cause of action.

"No authority can be found," said PETTIT, J., "where negligence has been directly charged against the defendant, that a demurrer for want of sufficient facts has been sustained." (*Hildebrand* v. *R. R. Co.* 47 Ind. 399; *Ohio etc. Ry. Co.* v. *Collarn*, 73 Ind. 261; 38 Am. Rep. 134.)

The sufficiency of the evidence is a matter that needs to be considered but briefly. But in doing it, it is well to keep in mind that the ground on which the plaintiff bases his right of recovery was that it was the duty of the defendant to see that due care was used to prevent the running of engines down upon the car repairers while they were at work in the yard, and upon cars upon its tracks, and to see that the switching and operating was done in such a manner or so regulated as to preserve as far as possible the safety of the place where the men were at work. It was negligence in this regard in not performing such duty and thereby exposing the plaintiff to injuries not necessarily resulting from his occupation at the place of employment, which is imputed to the defendant. It concedes that the plaintiff assumes the risks incident to the service in which he was engaged, and all open and visible risks, as well as the negligence of co-servants, but it asserts the well established doctrine that he has the right to presume that the master will be vigilant in the use of means and in the adoption of measures adapted to the nature of the business to make the servants reasonably safe in their employment.

Briefly, the evidence showed that the yard had a large number of shops and buildings situated upon it in which a great many men were engaged at work at various occupations but which was cut up by a number of different

tracks and switches, and that among these was the one
upon which the injury occurred; that the car upon which
the plaintiff was at work had been brought in and left
upon the track, loaded with ·débris from a wreck upon the
road, consisting among other things of some heavy trucks
upon wheels; that when the collision occurred which
caused the injury, the plaintiff was at work among the
wheels and irons, and that he was thrown down by the·
shock and run over twice by the heavy wheels which
vibrated back and forth upon the car, etc.   The testimony
also shows that he was a car-repairer and that it was not a
part of his regular duty to strip the cars upon the track;
that· he had not ordinarily done that work, except once or
twice, as it generally was the work of the iron-men, etc.;
that he was put at work upon the car by order of the
foreman, and that the injury was caused by an engine with
cars attached running down upon the car upon which the
plaintiff was at work.   There was also evidence tending to
show that there had been some kind of custom of the yard
to hang out a flag upon the car when the employés were at
work upon it; that the flag was sometimes put along the
track between it and the next switch, but it does not show
whose duty it was further than that it was sometimes done by ·
the foreman of the car-repairers, but generally by the men
engaged on the work themselves, if it were done at all.   The
plaintiff testified that he did not know of this custom,
although he had once or twice seen flags out when the men
were at work, and that other men already were engaged at
work upon the car at the time he went to work, etc.   There
was also evidence tending to show that no flag had been
placed on the car where the men were at work, or between
them and the next switch.

There can be no doubt, looking at the whole situation
in the light of the evidence, where so many men were
employed some of them as the plaintiff, upon or about cars ·
upon the tracks of the yard which was netted with tracks
and switch tracks, and almost constantly in use, that it was

a requirement of duty to see that the switching and ope-
rating of engines about the yard were so regulated and
guarded as not to expose its employés to risks in the course
of their employment upon the cars on the tracks which
might be avoided by proper diligence.

That it was necessary under all the circumstances of the
case to require the defendant to take some precaution in
this regard, will not be denied. The evidence shows that
there was some sort of a custom for some one to hang out
a flag as indicated to protect the men when so employed
upon cars on the tracks of the yard; but upon whom
devolved such duty, or that such custom had the force of
a rule, is left in darkness. It is even doubtful whether
there was such a custom in the sense the term implies as
applied to the requirements of the situation; but be this
as it may, the question still remains, whether it was suffi-
cient as a precaution or whether any precautions were
promulgated or established designed to meet the exigency
and dangers of the situation. All this as well as the care
exercised by the plaintiff at the time of the injury, are
questions for the jury to determine under all the circum-
stances of the case and not for the court.

The view we have taken eliminates much of the mass
of instructions asked and refused, and renders their consid-
eration unnecessary. The reason is, that the complaint is
not based upon any negligence of the servants operating
the engine not due to the fault of the defendant. In
theory, it concedes that the mere work of running an
engine appertains to the work of a servant, and excludes
the assumption of any liability for negligence occurring
in that capacity, or on that account. It charges the negli-
gence by which the plaintiff was injured directly upon the
defendant itself and not merely upon its employés. It
covers under its broad allegation any negligence of the
defendant which rendered the place unsafe, arising either
from carelessness or incompetency of the servants operating
the locomotives with notice of such faults or for the want

of proper rules promulgated to regulate and guard or sufficient precautions to apprise those running the locomotives of the proximity of the place of employment. It was negligence in not exercising proper diligence and care in this last regard, so as to regulate the switching and operating engines upon the yard and to preserve as far as possible the safety of the place where the employés were at work, to which the evidence was directed, and involved no imputation of negligence arising from co-service with the plaintiff. It is true as a last resort, to fortify himself against the reiterated argument that the negligence imputed was that of a fellow-servant, the plaintiff finally invoked the different-department distinctions as declared in the Ohio, Kentucky, and Tennessee decisions; which "departments," Judge DILLON said, "frequently exist only in the imagination of the judges, and not in fact," and that "whoever studies those decisions and the effect of trying to apply them will pause long before adopting them," and "whose courts," he thinks, "have constructed a labyrinth in which the judges that made it seem to be able to 'find no end in wondering mazes lost.'" (24 Am. Law Review 182, 189.)

Upon this record, we find no error in the other instructions excepted to that would authorize the reversal of the case. It is also assigned as error that the motion to dismiss the action, and to strike out the evidence for the plaintiff on the ground that there was but one party to the action, should have been sustained. It seems that the allegation that the defendant was a corporation was inadvertently omitted. After the plaintiff had introduced his testimony and rested, the defendant raised the question suggested by his motion, which the court overruled, except as to there being but one party to the action, but allowed the plaintiff to amend by inserting the allegation of incorporation. As the defendant did not desire to make any issue upon its incorporation, but confessed it openly, at the same time offering to interpose a new answer raising different issues,

which the court refused to grant, it is now claimed that the permission to amend and refusal to permit the defendant to raise new issues was error. The allegation of the incorporation of the defendant was merely formal, and did not in any way change the cause of action. The existence of the corporation was not involved as the gist or substance of the action. We think the name of the defendant is such as to import a corporation, and of so distinctive a character as to distinguish it from trading companies or partnerships. While it is best to insert such allegations of incorporation, even when only introductory, as here, it was amendable and could not work any injury to the defendant. Nor is the defendant in any position to avail itself of this objection. It appeared as a corporation and filed its answer verified by its agent. It voluntarily acknowledged in open court that it was a corporation under the name specified as the defendant in the action. As such there is no question but what it had ample opportunity to make its defense, including such affirmative matter as it might deem best to set up, or that it had omitted anything in its answer through inadvertence or mistake, or surprise, or anything of that kind.

Nor was there error in refusing to remove the cause to the United States court. The insertion of the allegation being merely formal, is not within the reason of the cases cited by the appellant in which the defendant's right to remove is preserved. The defendant did know that the "action was brought against it, and not against something else," for it appeared as a corporation and filed its answer to the merits by its agent.

Nor was there any error in refusing to submit to the jury several special findings which were presented in writing. The giving or refusal of them is in the discretion of the court. In *Swift* v. *Mulkey*, 14 Or. 59, the court says, by THAYER, J.: "The refusal of the court to direct special findings as requested by appellant's counsel was wholly discretionary. This court will not undertake to review any

such rulings of the circuit court." The defendant was not within the purview of section 240, Hill's Code, involving propositions of fact which it claimed had been established by the evidence. And even if the defendant had properly brought the question it seeks to have decided within the ruling in *Knahtla* v. *O. S. L., etc., Ry. Co., ante,* 136, at the present term, the submission of such facts are discretionary with the trial court, and there is no error.

Upon the whole we think there is no error disclosed by the record which authorizes a reversal of the case, and the judgment must be affirmed.