## JOHNSON v. PORTLAND STONE COMPANY.

[67 Pac. 1013, 68 Pac. 425.]

DUTY OF MASTER TO SERVANT—DELEGATION OF DUTY.

1. It is the duty of a master to exercise reasonable care to provide his servants with reasonably safe places to work, with reasonably competent fellow-workmen, and, in proper cases, to make needful rules for the safe conduct of the business; and the master cannot exempt himself from liability for non-observance of these duties by delegating them to any servant or employee: *Mast* v. *Kern,* 34 Or. at p. 251, approved.

WHO ARE FELLOW-SERVANTS.

2. Persons who work together in a quarry drilling holes for blasts and loading them with powder are fellow-servants, though one takes the lead and gives directions, so that his negligence is a risk assumed by the others: *Anderson* v. *Bennett,* 16 Or. 515, distinguished.

ASSUMING RISK OF CARELESS FELLOW-SERVANT.

3. A servant who continues to work with a careless or incompetent fellow-servant, knowing him to be so, and without complaint cannot be heard to say the master was negligent in keeping him, for he assumed the chance of injury resulting from such servant's carelessness.

PROMULGATION OF RULES.

4. A master is not negligent in failing to adopt and enforce rules for the conduct of his business, or a particular department of it, unless reasonable care should have foreseen the necessity for them; thus, there is nothing in the business of drilling out the tamping from a hole loaded for a blast which has failed to explode, that calls for the promulgation of rules by the master, the selection of means therefore being a detail depending on the judgment of the workmen.

From Multnomah: ALFRED F. SEARS, JR., Judge.

Action by C. O. Johnson against the Portland Granite & Stone Co. to recover damages for a personal injury. There was a judgment for plaintiff, from which defendant appeals.
REVERSED.

For appellant there was a brief and an oral argument by *Mr. Ralph W. Wilbur.*

For respondent there was a brief over the name of *Cake & Cake,* with an oral argument by *Mr. Harry M. Cake.*

Mr. Chief Justice Bean delivered the opinion.

This is an action to recover damages for personal injuries alleged to have been received by the plaintiff through the negligence of the defendant. In 1899 the defendant owned and operated a stone quarry in Whitman County, Washington. For some months prior to August of that year the plaintiff had been working in the quarry with other employes under the charge of a superintendent or manager, excavating and removing rock by blasting. Among the workmen was one Nelson, who acted as powder man, and whose business was to load and discharge holes drilled by himself and other employes. The plaintiff was a common laborer, and his particular work was drilling holes at such places as might be designated by the foreman in·charge of the work, and assisting Nelson, the powder man, by carrying sand, powder, and other supplies as requested by him. About the time the plaintiff commenced work he was directed by the foreman to work with Nelson, and as this order was never countermanded he continued to so work until disabled by the accident; he, Nelson, and a workman named Krahtsch working together in a kind of "gang" at drilling when there were no holes to load, and the plaintiff and Krahtsch assisting Nelson when he was using powder. Nelson had no control over either Johnson or Krahtsch, except when they were helping him in loading the holes, and then only to direct them what to do. On the afternoon of July 31 an attempt was made by Nelson to fire two blasts, but for some reason one of them did not explode, and on the next morning, while he, Johnson, and Krahtsch were attempting to remove the tamping from the missed hole, the drill came in contact with the charge, and exploded it, severely injuring plaintiff.

The plaintiff's version of what occurred and how the accident happened is substantially as follows: "When I went out to the quarry from the bunk house, Mr. Nelson met Krahtsch and myself at the blacksmith shop, and handed us a gunny sack apiece, and told us to go down to the river and get some sand and bring it up to the quarry, saying that he was going

to reload the hole which he shot off the night before. When we got to the quarry Nelson was there, and had an iron spoon in his hand scratching out the dirt from the hole that the tamping was in. From the dirt lying around and the appearances, I thought it had gone off. I said to Mr. Nelson when I came up, 'It did not blow all the tamping out?' and he said, 'No, we will drill it out;' and I said, 'It is all right then, is it?' and he said, 'Yes; it is all right.' Krahtsch and I then commenced to drill out the tamping. As the drill was too short, Krahtsch went to get another, and while he was away Nelson took hold of the drill, and while he and I were turning it in the hole the charge exploded. Nelson ordered us to drill out the tamping. I did not see any tamping in the other hole. It showed plainly that it had been a complete explosion. I did not fear that there was a load in the hole, for Nelson said that it was all right, and I thought he knew it had gone off. I depended upon him, and never objected to assisting him to take the tamping out of the holes. I have known Nelson since 1895. Worked in quarries with him. He is what is regarded as a fast workman. When I went to work in the granite quarry, the foreman told me to go and work with Nelson, and from that time on he always called me when he needed help. I made no objection to working with him, and had an opportunity to see and know how he did his work.'' The testimony of Krahtsch, the only other witness present at the time of the accident, is substantially as follows: ''I have had three or four months' experience as a powder man. I began work at Granite Point in April, 1899, and worked until the twelfth of December the same year. Nelson was powder man during the time. I worked in the same gang as Johnson and Nelson. We drilled together on the morning of the thirty-first of July. On the morning of August 1, at half past three, we went to work, and Nelson said to Johnson and myself, 'Go down to the river, and get a sack of sand apiece, and bring it up to the top of the hill, and I'll go to the powder house and get the powder ready. We are going to drill the tamping out of this hole, and blow the stone over.' The blast that was put in on

the evening of July 31 was to turn the stone over or crack it, in the first place, which is called a spring shot. Nelson said, 'I will go and get the powder ready. We are going to drill the tamping out of this hole again, and throw the stone over.' When I got up to the hole Johnson was already there, and Nelson was scraping the tamping out with a spoon, and throwing it around the hole. After the hole is deep enough to hold water, the custom is to put in the drill, and commence drilling, and take the swab stick and swab it out. When we came up I cannot remember anything particular that was said, only that Johnson said, 'Is the hole all right?' and Nelson said, 'Yes; the hole is all right.' We then put some water in, and Johnson and Nelson commenced to drill. After he put the water in again, I said to Nelson, 'Give me the drill; you do your powder work or your other work, and Johnson and I will do the drilling.' In some quarries it is the custom for persons assisting the powder man to rely upon him for his safety; in others, not. In some the powder man works by himself, and in others he has assistants or helpers. In the granite quarry Nelson had a gang. Johnson and myself were his gang. Of course, when Nelson said to go to work we had to do it, as Nelson was to know what was going on. He was required to be sure that the hole was all right to drill out. It was his business to know. Johnson had nothing to do with it, but had to take what Nelson said. When a driller is assisting a powder man, and is told by the powder man to do something, he has to do whatever he is told. I can't remember who sent me to work with Nelson,—whether it was Cole or the foreman. There was nothing about the conditon of the hole that made me afraid to drill it out. The regular way of taking tamping out of an unexploded hole is with a spoon to begin with, and then they usually use a drill for the sand and stuff before they use a mud stick. I never objected to working with Nelson. If I had, I guess I would have been discharged. Water is put in the holes to keep the drill from striking fire. We were not preparing for a sand blast, but wanted to load the hole again to refire it.'' There

was also evidence tending to show that Nelson was known among the workmen as a fast workman, and in his haste was sometimes careless, and did not exercise proper caution in handling powder. Upon these facts, the question is whether the defendant is liable for the injury received by plaintiff.

The grounds of recovery alleged in the complaint are: (1) That plaintiff was not provided a safe place in which to work, because of the negligence of Nelson in ordering and permitting him to use a steel drill to remove the tamping from a missed hole; (2) that Nelson, the powder man, was incompetent, and the defendant was negligent in retaining him in its service after knowledge of such incompetency; and (3) that defendant was negligent in not promulgating rules and regulations by the observance of which the plaintiff could have avoided the danger.

1. It is the duty of the master to exercise due care to provide his servant a reasonably safe place in which to work, reasonably competent fellow-workmen, and, when the exigencies of the business require, to make needful rules and regulations for the safe conduct of the business, and he cannot exempt himself from liability by delegating these duties to any servant or employe, whatever his rank. This doctrine has been so often announced by this court that it is needless to cite authorities in its support. But when the master has provided for the servant a reasonably safe place in which to work he is not responsible because it is afterwards made dangerous by the carelessness or negligence of a coservant or employe, while in the discharge of duties pertaining to a mere operative, even though he be the superintendent or foreman in charge of the work: *Mast* v. *Kern,* 34 Or. 247 (54 Pac. 950, 5 Am. Neg. Rep. 88, 226, 75 Am. St. Rep. 580), and notes.

2. This is the principle by which, in our opinion, this branch of the case must be determined. The place where the plaintiff was injured was not made unsafe or dangerous through any fault or negligence of the defendant, nor any one representing it, in the discharge of any duties which it owed to its servants. If there was negligence at all, it was in the plaintiff and his

associates failing to properly and safely carry out the details of the work, and not in the master's failure to provide a reasonably safe place to do the work. The removing of the tamping and reloading the missed hole was incident to the work in which Nelson and plaintiff were engaged, and was a part of their duties. In its performance they were, as to such work, fellow-servants, and the negligence of either was not chargeable upon the common master. They were, at the time of the accident, co-operating in the performance of the same business, working side by side, and the fact that Nelson took the lead or gave directions as to the work, did not make him any the less a fellow-servant of the plaintiff. His negligence in this regard was one of the risks of the employment which the plaintiff assumed: *Kean* v. *Detroit C. & B. Rolling Mills,* 66 Mich. 277 (33 N. W. 395, 11 Am. St. Rep. 492) ; *Richmond Locomotive Works* v. *Ford,* 94 Va. 627 (27 S. E. 509) ; *Kenney* v. *Shaw,* 133 Mass. 501. The last case cited is in its facts very much on all fours with the one under consideration, and, having been decided before the passage of the employers' liability act by the State of Massachusetts, the principle therein announced would seem to be controlling here. In *Anderson* v. *Bennett,* 16 Or. 515 (19 Pac. 765, 8 Am. St. Rep. 311), which seems to be relied upon by the plaintiff, the injury occurred through the negligence of one who was charged with the performance of a duty which the master himself was required under the law to perform, and who was therefore a vice principal; while here the offending servant was a mere coemploye with the plaintiff, working with him at the time of the accident in a common service, and for whose negligence while so engaged the master is not responsible.

3. A contention is made that Nelson was incompetent, and that the defendant was guilty of negligence in retaining him in its service after knowledge of that fact. The testimony on this point tends to show that Nelson was a "fast workman," and in his haste was sometimes not as careful as some of the witnesses thought he ought to have been, but if this constituted carelessness or incompetency the plaintiff cannot complain,

.because the evidence shows that he had been acquainted with Nelson for some time, had worked with him in quarries, and was entirely familiar with the manner in which he did his work, notwithstanding which he chose to continue in the service with him without objection. It is a familiar principle that if a servant continues to work with a careless or incompetent person after knowledge of that fact, making no complaint and not calling the attention of the master to the fact of such incompetency, he cannot maintain an action against his employer for an injury received through the carelessness of such servant: *Frazier* v. *Pennsylvania. R. Co.* 38 Pa. 104 (80 Am. Dec. 467), and authorities cited; *Hatt* v. *Nay,* 144 Mass. 186 (10 N. E. 807); McKinney, Fel. Serv. § 88.

4. It is also claimed that the defendant was negligent in not promulgating rules by the observance of which the accident could have been avoided. There was nothing in the nature of the business in which the plaintiff was engaged at the time of the injury which made it necessary for the defendant to make and publish rules. The mere failure to adopt rules is not proof of negligence, unless it appears that the master, in the exercise of reasonable care, should have foreseen and anticipated the necessity for such precaution. It is not suggested in this case what particular rules could have been adopted that would have been likely to prevent the accident. Whether a steel or iron drill or some other means should have been used to remove the tamping from the missed hole was a mere detail of the work, depending upon the judgment of the workmen, and not a matter for the defendant to regulate by rules: *Wagner* v. *Portland,* 40 Or. 389 (67 Pac. 300).

Under the facts in this case, and the law applicable thereto, in our opinion there is no alternative but to reverse the judgment; and it is so ordered.                          REVERSED.

Decided 7 April, 1902.

On Motion for Rehearing.

Mr. Chief Justice Bean delivered the opinion.

Where, as in *Laning* v. *New York Cent. R. Co.* 49 N. Y. 521 (10 Am. Rep. 417), relied upon by the defendant, there is evidence tending to show that the servant had a reasonable excuse for remaining in the employment of the master, notwithstanding his knowledge of the incompetency of a fellow-servant, it is a question for the jury as to whether he was guilty of contributory negligence in so doing.   In this case, however, there is no such evidence.   No testimony whatever was given by the defendant, and that of the plaintiff shows that he had been acquainted with Nelson for several years prior to the accident, had worked with him not only in the quarry of the defendant company, but in quarries belonging to other parties, was familiar with the manner in which he did his work, and must necessarily have known of his incompetency, if he was in fact incompetent, notwithstanding which he continued to work with him without complaint.   Under such circumstances, the question of defendant's liability to the plaintiff for an injury sustained in consequence of Nelson's incompetency is a question of law, and not of fact.   There was no case for the jury, and the plaintiff was not entitled to have it submitted to them: 12 Am. & Eng. Ency. Law (2 ed.), 920.

The petition for rehearing is therefore denied.

Rehearing Denied.