Argued January 11, reversed February 8, 1961

O'NEAL *v.* MEIER & FRANK COMPANY

359 P. 2d 101

*Roland F. Banks, Jr.* and *Wayne A. Williamson,* Portland, argued the cause for appellant. With them on the brief were Mautz, Souther, Spaulding, Kinsey & Williamson and Gino G. Pieretti, Portland.

*Jack L. Kennedy,* Portland, argued the cause for respondent. On the brief were Evans & Kennedy, Portland.

Before McAllister, Chief Justice, and Rossman, Perry, Goodwin and Lusk, Justices.

LUSK, J.

Plaintiff, an employee of defendant, brought this action to recover damages for personal injuries alleged to have been sustained by her while she was engaged in moving a pickle barrel in the course of her employment. In a trial by jury, she recovered a judg-

ment for $13,500 general damages and $4,031.70 special damages, and the defendant has appealed.

Plaintiff was employed as a helper in the kitchen of the coffee shop on the tenth floor of the Meier & Frank department store on the west side of the city of Portland. She alleged in the amended complaint that her injuries were caused by the negligence of the defendant in the following particulars (omitting specifications withdrawn by the trial court):

1. In failing to provide sufficient or adequate help in said kitchen.

2. In permitting the working and storage space in said kitchen to become unnecessarily obstructed under the circumstances then and there existing.

3. In failing to adopt and promulgate and enforce reasonable rules and regulations concerning the proper handling of pickle barrels.

4. In failing to provide the plaintiff with a safe place in which to work, as aforesaid.

Defendant moved for a judgment of involuntary non-suit and a directed verdict. The motions were denied and the rulings are assigned as error.

Plaintiff claimed on the trial that the Employers Liability Act, ORS 654.305 et seq., applied, but the court ruled otherwise and the question raised by the assignments of error is governed by the common law rules of negligence.

There was evidence of the following facts: Plaintiff was 53 years of age and in good health at the time of the accident, which occurred on August 31, 1956. She commenced to work for the defendant in June, 1953. Her general duties included taking care of the machines and washing them, preparing the food and helping with the salads and the like. At one end of the kitchen, there was a U-shaped counter partially

enclosing the area within which the plaintiff usually worked. Once a week a barrel of pickles was brought into the kitchen on a dolly by a bus-boy and either placed on the floor near the closed end of the "U" or shoved under the counter at that end. These barrels held 15 gallons of pickles and when full weighed 145 pounds. There were two bus-boys, each 19 years of age. Also on the floor at that end of the kitchen there were garbage cans which were used by the employees in connection with their duties, and because the space between the two sides of the counter was narrow, it was necessary to keep the barrels and garbage cans under the counter in order to afford the employees sufficient room in which to work.

Not only did the bus-boys leave the pickle barrels on the floor in the working area, but the "girls" would come in from time to time to get pickles from a barrel and pull it out from under the counter and neglect to push it back. Thereupon, it became the duty of the plaintiff and sometimes of other women employed in the kitchen to push the barrel back, though the job usually fell to the plaintiff because she worked in that part of the kitchen most of the time.

Eight women were employed in the kitchen in addition to the Department Manager, Mrs. Emma Johnson.

The plaintiff testified that Mrs. Johnson had told her and the other girls to get the barrels out of the way under the counter, that she had many times before pushed back both empty and full barrels, that sometimes they would help each other push the barrels back and sometimes the others were too busy to help.

When the plaintiff came to work at 8:30 on the morning of August 31, 1956, there was a full pickle barrel out in the aisle. Later and before the accident the girl "that started slicing pickles" had pulled out

a barrel and left it out. The plaintiff put the sliced pickles in the Frigidaire and about 10:00 a. m. started pushing the barrels back. She described what occurred as follows:

"Q   Which barrel did you push back first?
"A   The partly empty one.

"Q   Was there anything unusual about them at all?
"A   Pardon?

"Q   Did anything happen with respect to your pushing back this partially empty one?
"A   No.

"Q   Then what did you do?
"A   Then I pushed the full barrel back.

"Q   How did you do that?
"A   I pushed it with my right foot. It was partly on the rubber mat.

"Q   Is there a rubber mat there?
"A   Yes.

"Q   Where does that extend to?
"A   Oh, it doesn't go clear to the end of the counter. It's about—it was always about six inches back, away from the counter, you know.

"Q   Away from the edge of the counter?
"A   Yes.

"Q   Was that barrel sitting partially on the mat?
"A   Yes, it was.

"Q   How did you push that barrel, Mrs. O'Neal?
"A   Oh, I would just take ahold on both sides of the counters, you know, so I could get some strength, and I pushed on it and pushed it back under the counter.

"Q   With what leg?
"A   My right one.

"Q   Did you experience any difficulty in pushing it?
"A   Yes, I did.

"Q Explain, will you, please?

"A Well, pushing very hard to get it off that rubber mat, and while I was pushing it I felt a pain in my leg. I just kept on pushing. So finally, I got it off the rubber mat and then worked some more and got it under the counter."

On cross-examination the plaintiff testified that she pushed "right in the center of the barrel."

She further testified that if a bus-boy was right there he would help; that she had frequently asked the bus-boys to lift boxes for her and they had complied; but on this occasion the bus-boy on duty was not in the kitchen and she made no effort to get him. There were, however, three other girls in the kitchen about ten feet from her busy working on the food. She did not ask them for assistance.

Further testimony on behalf of the plaintiff tended to show that as a result of her exertion, the plaintiff sustained a fractured hip with serious secondary consequences.

■■ It was the duty of the defendant to exercise reasonable care to provide a sufficient number of fellow employees to do the work in safety, but the defendant was not an insurer of her safety. The answer to the charge that the defendant violated this duty lies in the fact that the uncontradicted evidence shows that the defendant did furnish the plaintiff a sufficient number of fellow employees. To say nothing of the bus-boy who was not in the kitchen at the time but was on the floor nearby, there were three women employees not more than ten feet away. The women had been accustomed to helping one another in the moving of pickle barrels and there is nothing to show that if plaintiff had called on one of them for assistance she would not have gotten it. Her testimony that her

fellow employees were at the time "busy working on the food" does not permit of a contrary inference. In these circumstances, it cannot be said that plaintiff was injured because of defendant's failure to provide a sufficient number of fellow employees. *Thompson v. Atchison, T. & S. F. Ry. Co.,* 96 Cal App2d 974, 217 P2d 45; *Lowden v. Bowen,* 199 Okla 180, 183 P2d 980; *White v. Owosso Sugar Co.,* 149 Mich 473, 112 NW 1125; *Harrison v. North Carolina R. Co.,* 194 NC 656, 140 SE 598; *Western Union Telegraph Co. v. Coker,* 146 Tex 190, 204 SW2d 977.

■ Beyond that, the rule approved in *Ferretti v. Southern Pacific Co.,* 154 Or 97, 102, 57 P2d 1280, that the defendant is not liable because the plaintiff knew as well as, if not better than, her employer whether the work was beyond her physical capacity, is applicable. See *Burian v. Los Angeles Cafe Co.,* 173 Cal 625, 161 P 4; Prosser on Torts, 2d Ed 310; 35 Am Jur 723, Master and Servant, § 299; cases cited in annotation 36 ALR2d 106, § 26. As the court said in *Nephew v. Whitehead,* 123 Mich 255, 81 NW 1083:

> "If the plaintiff can recover in this case, an employer of labor would be liable whenever an accident occurred. The operation to be performed was a simple one. With the experience plaintiff must have had in handling heavy objects, he must have known as much about the danger * * * as any one."

In view of the evidence that for three years, the plaintiff had moved pickle barrels as an employee of the defendant, sometimes with and sometimes without assistance, and always without complaint that the work was too heavy, the defendant had no reason to believe that the work was beyond the plaintiff's strength or a potential danger to her physical well-being.

*Christie v. Great Northern Ry. Co.,* 142 Or 321, 20 P2d 377, cited by the plaintiff is distinguishable. The case arose under the Federal Employers' Liability Act, 45 U.S.C.A., 351 et seq. The plaintiff, a railroad brakeman, was engaged with the conductor, his foreman, in unloading from a boxcar a pair of engine wheels attached to an axle. He was injured when the conductor let the wheel at his end slip as the result of which the plaintiff was thrown off balance. A judgment for the plaintiff was affirmed. The defendant's contention that the plaintiff should have called for assistance was answered by stating that the plaintiff was working "under the direction of his superior, whom it was his duty to obey, and * * * it was not the duty of a brakeman to direct the conductor how the work should be done." 142 Or 326, 20 P2d 379. It was further held that the negligence of the conductor, if such it was, was not a danger which it could be said as a matter of law was reasonably to be anticipated by the plaintiff.

Other Oregon cases cited by the plaintiff are *Hale v. Electric Steel Foundry Co.,* 183 Or 275, 191 P2d 396, 192 P2d 257, 192 P2d 986, *Wike v. Oregon-Washington R. & N. Co.,* 83 Or 678, 163 P 825, and *Hartman v. Oregon Elec. Ry. Co.,* 77 Or 310, 149 P 893, 151 P 472. In the Hale case, it appeared that the plaintiff was required to lift steel slabs, some weighing as much as 100 pounds onto a spoon having a long handle and load them into a furnace, the heat from which was intense. The ground where he was required to stand was covered with pieces of steel, rock and coke. He had been refused the right to use a crane which was nearby and would have made his task easier and safer. Upon a consideration of this combination of circumstances, the court held that the evidence of negligence was

sufficient. A judgment for the plaintiff was reversed because the trial court had instructed that the Employers' Liability Act applied as a matter of law instead of submitting that question to the jury. It is not clear from the opinion whether this court held that the evidence was sufficient to show common law negligence or that the defendant had failed to comply with the higher standards of the Employers' Liability Act.

The Hartman case did not involve lifting or moving a heavy object. The employee there was an electrician's helper. He was inexperienced in that work. While engaged in stringing electric wires, he received an electric shock from the effects of which he died. The court held that the evidence justified a finding that the defendant was negligent in not providing assistance to the deceased in the highly dangerous and somewhat complex work in which he was engaged.

In the Wike case, there was evidence that the usage was to employ two men to do the work which plaintiff was doing at the time of the injury.

We do not consider any of these cases controlling here.

The plaintiff also relies upon two federal cases— *Great Atlantic & Pacific Tea Co. v. McConnell*, 199 F2d 569 (5th Cir.), and *Great Atlantic & Pacific Tea Co. v. Robards,* 161 F2d 929 (4th Cir.). Without stating the facts, it is sufficient to say of the former case that the court sustained liability of an employer to his employee under evidence very similar though not identical to that with which we are now dealing. We are inclined to agree with the dissenting opinion of Chief Judge Hutcheson who, among other things, said that under the court's decision the trial judge "must submit every case of claimed injury for the jury's determination just as though it were a workmen's com-

pensation suit, the only real issue being whether the injury arose out of, and was incurred in the course of, the employment, and the jury thought he ought to recover." We do not feel that we are at liberty to follow this decision.

The Robards case arose under the Federal Employers' Liability Act and a judgment against the employer was affirmed. Two points of distinction might be suggested: one, that the plaintiff, a woman, had theretofore complained to her employer about the lack of help, and the other that because it was wartime, she was doing work theretofore assigned to men. It is pertinent to observe, moreover, that decisions of the federal courts on questions of the sufficiency of the evidence in negligence cases arising under the Federal Employers' Liability Act are not necessarily persuasive in the determination of like questions in cases arising under state law; for the Supreme Court of the United States does not require substantial evidence of negligence to support a recovery under the federal act.

■■ We consider next the charge that the defendant was negligent in permitting the working and storage space in the kitchen to become unnecessarily obstructed. This is a particularized claim of breach of the employer's general duty to use reasonable care to provide plaintiff with a safe place to work. See *Celorie v. Roberts Bros., Inc.*, 202 Or 671, 674, 276 P2d 416. It should be here pointed out that the final charge of negligence, namely that the defendant failed "to provide the plaintiff with a safe place to work, as aforesaid" adds nothing issuable to the pleading for the reason that where there is a general statement of that kind either preceding or followed by a specific statement of the facts, the specific statement governs. *Wild*

*v. O.S.L.R. Co.,* 21 Or 159, 161-162, 27 P 954. See also *Cosgrove v. Tracey,* 156 Or 1, 12, 64 P2d 1321. The general specification, therefore, need not be further noticed. As to the specific charge that the kitchen was unnecessarily obstructed, we think that the evidence fails to disclose that this condition was the proximate cause of the accident. The case is unlike *Celorie v. Roberts Bros.,* supra, and other Oregon cases cited by the plaintiff involving obstructions in a working area. In the Celorie case, the plaintiff, the employee of a department store, working at the "will-call" counter, was required among other duties to receive and check packages and bundles brought there by customers of the store. Owing to the fact that there was not sufficient room behind the counter, the floor there became so cluttered up with packages that the plaintiff was unable to stand close to the counter, thus making it more difficult for her to handle the packages. There was evidence that due to this condition, the plaintiff lost her balance while lifting a heavy, cumbersome shopping bag which a customer had placed on the counter for checking, and was injured. Thus, the obstruction in the working area was a factor that contributed to the injury. Here, however, while it is true that there were obstacles in the part of the kitchen where the plaintiff worked which might have prevented her from efficiently discharging her ordinary duties, had they remained there, it is not true that in any legal sense these obstacles were the cause of her injury. As a part of her duty, the plaintiff undertook to relieve the situation by moving the pickle barrels back under the counter. But whatever hazard there may have been in performing that task, it was not created or contributed to by the congestion. The plaintiff had all the room she needed for moving the barrels.

It was an entirely safe place for that work. The congestion was merely an existing condition—it was the reason why the barrels ought to be moved, but not the cause of plaintiff's injury. Accepting her testimony as true, as it is our duty to do, the cause of her injury was the undertaking of a task which, in this instance, proved to be beyond her strength.

The plaintiff argues that the defendant was under a statutory duty to furnish a safe method and place of employment, citing ORS 654.010 which reads:

"Every employer shall furnish employment and a place of employment which are safe for employes therein, and shall furnish and use such safety devices and safeguards, and shall adopt and use such practices, means, methods, operations and process as are reasonably adequate to render such employment and place of employment safe, and shall do every other thing reasonably necessary to protect the life and safety of such employes."

The foregoing section was construed in *Shelton v. Paris,* 199 Or 365, 368, 261 P2d 856, and there held to be only declaratory of the common law. The court said: "This section in general enjoins upon an employer the same duties that were required by the common law." In the case of *Ritter v. Beals et al,* decided January 25, 1961, 225 Or 504, 358 P2d 1080, we held on the authority of *Hill v. Saugested,* 53 Or 178, 189, 98 P 524, 22 LRA, NS, 634, that the effect of this statute, to which a penalty provision is attached, is to withdraw the defense of assumption of risk. But the statute does not for that reason expand the employer's common law duty. The statute speaks in terms of safeguards that are "reasonably adequate" to render the employment and place of employment safe and of measures "reasonably necessary" for the safety of the

employees. It therefore calls for no more than the exercise of the care of a reasonably prudent employer. The fact that the defense of assumption of risk is not available to the employer has no bearing here, as, in our view, there is no evidence of negligence of the defendant.

■ The final charge of negligence is the failure of the defendant to adopt, promulgate and enforce suitable rules and regulations for the proper handling of pickle barrels. The rule upon that subject is thus stated in *Blust v. Pacific Telephone Co.*, 48 Or 34, 38, 84 P 847:

> "When the business in which the master is engaged is complicated or dangerous, or where the employees work in different departments or at different sorts of work, and the safety of one depends upon the performance of the duties of another at stated times or in a particular manner, it is the duty of the master to provide and enforce suitable rules and regulations governing their conduct and that of the business: (citing authorities). But when the duties to be performed by the servants are simple and the appliances easily understood, rules are not required: (citing authorities)."

See also *Johnson v. Portland Stone Co.*, 40 Or 436, 442, 67 P 1013, 68 P 425; *Galvin v. Brown & McCabe,* 53 Or 598, 609, 101 P 671; *Brown v. Oregon Lumber Co.*, 24 Or 315, 318, 33 P 557; Prosser on Torts 2d Ed 377, note 46 LRA (NS) 233. It is also held, though the point is not involved here, that where there is competent evidence that other employers engaged in the same sort of activity as the defendant had adopted and put into operation such rules with serviceable results, a jury could find that it was negligence not to have adopted such rules. *Wagner v. Portland,* 40 Or 389, 405-406, 60 P 985, 67 P 300. It is not thought neces-

sary to labor the proposition that the simple operation of moving a pickle barrel a few feet inside the kitchen of a coffee shop in a department store is not the sort of work that calls for the adoption of rules and regulations by the employer. An examination of the cases to which the plaintiff calls our attention and in which the court held that failure of the employer to adopt rules and regulations could be found to be a negligent omission, discloses the existence of activities in the particular business or industry which, either because of their complexity or their dangerous character, or both, brought these cases within the principle heretofore enunciated by this court. See *Ferrari v. Beaver Hill Coal Co.*, 54 Or 210, 227-229, 94 P 181, 95 P 498, 102 P 175, 102 P 1016; *Hartvig v. N.P.L. Co.*, 19 Or 522, 525-527, 25 P 358; *Jodoin v. Luckenbach S. S. Co., Inc.*, 125 Or 634, 643, 268 P 51; *Lindsay v. Grande Ronde Lumber Co.*, 48 Or 430, 437, 87 P 145; *Tremblay v. J. Rudnick & Sons, Inc.*, 91 NH 24, 13 A2d 153; *United Novelty Co., Inc. v. Daniels* (Miss.) 42 So2d 395 (rule made, but not enforced); *Wild v. O.S.L.R. Co.*, supra, 21 Or at 166-167, 27 P at pages 956-957; *Williams v. W. R. Pickering Lumber Co.*, 125 La 1087, 52 So 167.

The circuit court erred in denying the defendant's motions for a judgment of involuntary non-suit and a directed verdict. The judgment is therefore reversed and the cause remanded to the circuit court with directions to enter judgment for the defendant.