Argued September 11, reversed and remanded December 6,
1967, petition for rehearing denied January 16, 1968

PELTIER, *Respondent, v.* DAHLKE ET AL,
*Appellants.*

434 P. 2d 457

*Thomas S. Moore,* Portland, argued the cause for appellants. With him on the briefs were Morrison & Bailey.

*Ray G. Brown,* Portland, argued the cause and filed a brief for respondent.

Before PERRY, Chief Justice, and MCALLISTER, O'CONNELL, DENECKE and LUSK, Justices.

LUSK, J.

This is an appeal by the defendants from a judgment for the plaintiff in a personal injury action.

The only error assigned that calls for discussion is the trial court's denial of defendants' motion for a judgment of involuntary nonsuit.

Defendants were the owners of the Roseland Hotel in Portland and for several years prior to the accident in which plaintiff was injured, she was employed by them as a clerk at the registration desk. On February 10, 1964, while working behind the desk she fell to the floor and sustained serious injuries, including a broken hip. Plaintiff claims that the cause of her injury was defendants' failure to provide her a safe place in which to work. A description of that place, therefore, becomes necessary.

The area involved was enclosed by the wall of the lobby at the back and a horseshoe shaped counter which curved toward the wall at both ends. Approximately in the center of this area and attached to a pillar which ran from floor to ceiling against the wall was a key rack, such as are commonly found in hotels, consisting of a series of pigeonholes for room keys and the guests' mail. To the right of the key rack, as one faced

it, was a switchboard. The space between the switchboard and the key rack was approximately three feet in width. A person using the switchboard could have his back to the side of the key rack. The distance from the counter to the key rack was approximately three feet and the length of the counter between the curves of the horseshoe was about eight and one-half feet. There was conflict in the evidence concerning some of these dimensions, and we have stated those only most favorable to the plaintiff.

One of the services provided by the hotel was the sale of Oregon and out-of-state newspapers. The current papers were displayed on the counter of the registration desk. After 11 p.m. the unsold papers were stored under the counter and on the floor under the key rack, the bottom of which was approximately two feet above the floor, according to some of the testimony, and 18 inches according to the plaintiff. On this occasion the papers had been removed from the counter and stacked the night before by the night clerk, Eva Wright, who testified as a witness for the plaintiff that the pile of papers extended into the work area towards the counter six to nine inches and towards the switchboard two to three inches. The plaintiff testified that on the day of the accident the newspapers were stacked differently than previously, as they extended out over a larger area towards the counter and the switchboard—she estimated the disstances as 12 or 14 inches toward the counter and four or five inches toward the switchboard.

On the day of the accident the plaintiff reported for work about seven a.m. She did not spend all her time back of the desk because of other duties, such as vacuuming and dusting the lobby and feeding the parking meters for the cars of late-sleeping guests. There

were a few calls on the switchboard and one of these led to the accident, which occurred about one p.m. A guest telephoned to "check for a letter." The plaintiff told what then occurred as follows:

"And my back was to the rack, so I turned around to step before the rack, and there were the newspapers that were so close I stepped against them, and at the same time I was reaching down for those letters. It tilted me to the left, and I was reaching down to get all the letters,—there were several of the letters in the lower boxes,—in case it had been misplaced, and I reached up to regain my balance, and when I stepped back, I bumped against the tall switchboard, and that threw me to the left again. And then I took one step over the corner of the papers, and I tripped over them.

"I went sideways for two or three steps, and stepped onto that tall stool, and fell on that stool, and sort of draped over it, and I tried to push myself from the rungs, but they were too low, and I couldn't hang onto it that way.

"And I started sliding to the floor, and I was wedged between the counter and the stool."

The "tall stool" referred to by the plaintiff was close to the counter and probably eight or nine feet distant from the switchboard.

During her cross-examination plaintiff testified: "I bumped into the papers, but I reached up to regain my balance, and as I stepped back, I bumped against the switchboard, and that threw me to the left again." She was asked if she tripped as she reached over to the mail slot and answered: "No. I just lost my balance at that time."

There may be discrepancies between plaintiff's testimony above related and the account of the accident she gave in a pretrial deposition, but these are immaterial for present purposes, as plaintiff's claim

throughout is that she was injured as the result of coming in contact with the pile of newspapers when she turned and reached for the letters in the key rack and, this, the jury was warranted in finding, is what occurred.

In her amended complaint plaintiff alleged that her fall and injuries were caused by the negligence of the defendants, in the following particulars:

"A Defendants failed and neglected to provide plaintiff with a reasonably safe place in which to work.

"B Defendants failed to provide adequate lighting to illuminate the floor of plaintiff's work area.

"C Defendants required plaintiff to work in over-crowded surroundings and conditions."

■ In *O'Neal v. Meier & Frank Co.*, 226 Or 108, 359 P2d 101, we held that where there is a general allegation of failure of an employer to provide his employee with a safe place to work, preceded or followed by a specific statement of the facts which would support such a charge, the specific statement will govern. 226 Or at 117-118. In this case, regardless of that rule, we are limited by the evidence to a consideration of the allegations with regard to lighting and overcrowded conditions because no attempt was made by the plaintiff to prove that plaintiff's place of work was unsafe in any other respect.

The only evidence with regard to the lighting is the following testimony of plaintiff:

"Q How about the lighting there on the day you fell?

"A The lighting?

"Q No, what lights were burning in the lobby?

"A In the lobby only, but we didn't have any direct light to the floor.

"Q  Did you have any light over your work area?

"A  Yes, over the desk there was a little light, and that would show up on the desk.

"Q  Was there any light overhead to light up the floor area?
"A  No."

■ The plaintiff testified that she saw the newspapers and knew they were there. She was able, indeed, to describe the manner in which they were stacked and to tell the distance they extended into the work area. She testified that there was no "light overhead to light up the floor area," but she did not testify that there was poor visibility in the floor area which prevented her from seeing anything there—least of all the newspapers. The record is devoid of evidence to support the charge of insufficient lighting, and even though there were such evidence, insufficient lighting could not be considered a cause of plaintiff's injury.

The evidence is also insufficient to support the charge that defendants were negligent in requiring plaintiff to work in overcrowded surroundings and conditions.

■ The duty of a master to his servant is thus stated in Restatement, Agency 2d, § 492:

"A master is subject to a duty that care be used either to provide working conditions which are reasonably safe for his servants and subservants, considering the nature of the employment; or to warn them of risks of unsafe conditions which he should realize they may not discover by the exercise of due care."

As this court and other courts have frequently said, and as the Restatement reiterates in the comment to

the above-quoted section, the master is not an insurer of his servants against harm caused by the working conditions. To sustain liability in this case would, in our opinion, make the defendants insurers. It would be tantamount to a court dictating to the owner of a small hotel the size of the working space for his desk clerk, as well as the arrangement of the equipment. At most there was inconvenience, but nothing to suggest to a rational mind risk of injury to the plaintiff simply because of the size of the area in which she was working at the time of the accident or the distances between various objects shown by the testimony. Just as it evidently did not occur to the plaintiff that the conditions—including the different way in which the newspapers were stacked on the day in question—constituted a risk of harm to her, so we think that no employer in his right mind would have considered it necessary or prudent to warn his employee against "risks of unsafe conditions."

No case paralleling or closely resembling this one on its facts has been cited by counsel on either side, and after a diligent search we have not found such a case. The closest case, perhaps, is *Celorie v. Roberts Bros., Inc.,* 202 Or 671, 276 P2d 416. In *O'Neal v. Meier & Frank Co.,* supra, we pointed out the distinction between the *Celorie* case and the *O'Neal* case, 226 Or at 118. What we said there is applicable here, and it may be added that, in contrast with the facts here, the evidence in the *Celorie* case disclosed an aggravated condition which a jury might readily find could lead to an employee's injury, and concerning which the employee had complained to her employer.

■ Negligence is not presumed. The mere fact that plaintiff was injured is not sufficient to make a *prima*

*facie* case. Plaintiff had the burden of establishing negligence on the part of defendants and, in our opinion, failed to do so. The court erred in denying the motion for judgment of involuntary nonsuit.

The judgment is reversed and the cause remanded with directions to enter a judgment of involuntary nonsuit.