Argued January 7, affirmed June 24, 1970

PELTIER, *Appellant, v.* DAHLKE ET AL, *Respondents.*

471 P2d 434

*Ray G. Brown,* Portland, argued the cause and filed briefs for appellant.

*George M. Joseph*, Portland, argued the cause for respondents. On the brief were Thomas S. Moore and Morrison & Bailey.

Before PERRY,* Chief Justice, and McALLISTER, SLOAN, O'CONNELL, DENECKE and HOLMAN, Justices.

McALLISTER, J.

This is the second appeal of this case. On the first appeal, *Peltier v. Dahlke*, 248 Or 512, 434 P2d 457 (1968), we reversed a judgment for plaintiff and remanded with directions to enter a judgment of involuntary nonsuit. We held that plaintiff had failed to prove her charge of negligence.

■ Plaintiff refiled her case and upon retrial the court below allowed defendants' motion for nonsuit and dismissed the action. ORS 18.250. The question again is whether there was sufficient evidence of negligence to take the case to the jury. Unless the evidence in this case is different, our decision in the earlier case controls this one. *Simmons v. Wash. F. N. Ins. Co.*, 140 Or 164, 166, 13 P2d 366 (1932), and earlier cases there cited. See, also, *Marr et al v. Putnam et al*, 213 Or 17, 23, 321 P2d 1061 (1958); *Shaver Co. v. Eagle Star Ins. Co.*, 177 Or 410, 414, 162 P2d 789 (1945). We will, therefore, quote the resume of the controlling facts from our former opinion and then quote the additional evidence which, according to plaintiff, entitled her to go to the jury in this case.

"Defendants were the owners of the Roseland Hotel in Portland and for several years prior to the accident in which plaintiff was injured, she was employed by them as a clerk at the registration desk. On February 10, 1964, while working behind the

---

* Perry, C.J., retired June 1, 1970.

desk she fell to the floor and sustained serious injuries, including a broken hip. Plaintiff claims that the cause of her injury was defendants' failure to provide her a safe place in which to work. A description of that place, therefore, becomes necessary.

"The area involved was enclosed by the wall of the lobby at the back and a horseshoe shaped counter which curved toward the wall at both ends. Approximately in the center of this area and attached to a pillar which ran from floor to ceiling against the wall was a key rack, such as are commonly found in hotels, consisting of a series of pigeonholes for room keys and guests' mail. To the right of the key rack, as one faced it, was a switchboard. The space between the switchboard and the key rack was approximately three feet in width. A person using the switchboard could have his back to the side of the key rack. The distance from the counter to the key rack was approximately three feet and the length of the counter between the curves of the horseshoe was about eight and one-half feet. There was conflict in the evidence concerning some of these dimensions, and we have stated those only most favorable to the plaintiff.

"One of the services provided by the hotel was the sale of Oregon and out-of-state newspapers. The current papers were displayed on the counter of the registration desk. After 11 p.m. the unsold papers were stored under the counter and on the floor under the key rack, the bottom of which was approximately two feet above the floor, according to some of the testimony, and 18 inches according to the plaintiff. On this occasion the papers had been removed from the counter and stacked the night before by the night clerk, Eva Wright, who testified as a witness for the plaintiff that the pile of papers extended into the work area towards the counter six to nine inches and towards the switchboard two to three inches. The plaintiff testified that on the day of the accident the newspapers

were stacked differently than previously, as they extended out over a larger area towards the counter and the switchboard—she estimated the distances as 12 or 14 inches toward the counter and four or five inches toward the switchboard.

"On the day of the accident the plaintiff reported for work about seven a.m. She did not spend all her time back of the desk because of other duties, such as vacuuming and dusting the lobby and feeding the parking meters for the cars of late-sleeping guests. There were a few calls on the switchboard and one of these led to the accident, which occurred about one p.m. A guest telephoned to 'check for a letter.' The plaintiff told what then occurred as follows:

" 'And my back was to the rack, so I turned around to step before the rack, and there were the newspapers that were so close I stepped against them, and at the same time I was reaching down for those letters. It tilted me to the left, and I was reaching down to get all the letters,—there were several of the letters in the lower boxes,—in case it had been misplaced, and I reached up to regain my balance, and when I stepped back, I bumped against the tall switchboard, and that threw me to the left again. And then I took one step over the corner of the papers, and I tripped over them.

" 'I went sideways for two or three steps, and stepped onto that tall stool, and fell on that stool, and sort of draped over it, and I tried to push myself from the rungs, but they were too low, and I couldn't hang onto it that way.

" 'And I started sliding to the floor, and I was wedged between the counter and the stool.'

"The 'tall stool' referred to by the plaintiff was close to the counter and probably eight or nine feet distant from the switchboard.

"During her cross-examination plaintiff testified: 'I bumped into the papers, but I reached up to regain my balance, and as I stepped back, I bumped

against the switchboard, and that threw me to the left again.' She was asked if she tripped as she reached over to the mail slot and answered: 'No. I just lost my balance at that time.' " 248 Or at 513-515.

■ Plaintiff contends that the judgment of nonsuit in the first case does not control the case at bar because of "a wide difference in the evidence adduced at the two trials." Plaintiff concedes that "no evidence in this case contradicts evidence in the first case," but contends that the difference lies "in more complete proof" in this case. That proof consists solely of plaintiff's testimony concerning her alleged inadequate foot room as follows:

"Q  In other words let me ask you this way. What distance separated the base or bottom of the PBX [switchboard] from the stack of newspapers closest to it?
"A  Oh, about eleven or twelve inches.

"Q  All right. Now do you recall about how high that stack of newspapers was?
"A  About eighteen inches.

"Q  All right. Now what size shoe do you wear and overall measurement of your feet with your shoes on?
"A  With my shoes on?

"Q  Yes.
"A  Ten and a half."

In our view the claimed difference in plaintiff's testimony is not sufficiently material to permit us to abandon the law of the case as established in our former opinion. In the first case plaintiff testified that the newspapers "were so close I stepped against them," and, also, that she "took one step over the corner of the papers" and "tripped over them." After consider-

ing that testimony and the other evidence we held that the evidence was "insufficient to support the charge that defendants were negligent in requiring plaintiff to work in overcrowded surroundings and conditions." That conclusion is binding in this case. The following quotation from *Simmons v. Wash. F. N. Ins. Co.*, supra, 140 Or at 166, is particularly appropriate:

> " * * * A careful consideration of the evidence offered in the former trial shows that the facts in evidence upon both trials were substantially the same. It is a general principle of law and one well recognized in this state that when a ruling or decision has been once made in a particular case by an appellate court, while it may be overruled in other cases, it is binding and conclusive both upon the inferior court in any further steps or proceedings in the same litigation and upon the appellate court itself in any subsequent appeal or other proceeding for review: (Citing many earlier cases)."

In this case plaintiff alleges a violation of certain provisions of the Basic Safety Code, but we think those allegations add nothing to her case. In both cases plaintiff alleged that she was required to work in "overcrowded surroundings and conditions." In this case plaintiff also alleged, in the words of the Basic Safety Code, that defendants failed to keep her work area "free from unnecessary obstructions and debris." This seems to be the same charge in slightly different language and amounts, in essence, to charging that defendants failed to furnish plaintiff with a safe place to work.

The judgment is affirmed.